**CITY OF RICHMOND HEIGHTS, Appellee,**

v.

**CITY OF CLEVELAND, Appellant.**

[Cite as *Richmond Hts. v. Cleveland* (1995), 107 Ohio App.3d 378.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68516.

Decided Nov. 13, 1995.

*Walter & Haverfield* and *R. Todd Hunt,* for appellee.

*Charles E. Hannan, Jr.,* Assistant Director of Law, for appellant.

PATTON, Chief Justice.

Defendant-appellant, city of Cleveland, appeals the trial court's ruling granting the motion of plaintiff-appellee, city of Richmond Heights, for summary judgment and denying Cleveland's motion for summary judgment.

The following facts were stipulated to by the parties. On April 16, 1982, Cleveland and Richmond Heights entered into a contract regarding the supply of water and water-related services.

On August 2, 1993, a Cleveland sixteen-inch water main broke at 507 Richmond Road located in Richmond Heights, causing water to flow from the break into the pavement and the right of way of Richmond Road. Cleveland was first notified of the water main break at 12:23 p.m. A worker was dispatched to investigate and reported back to Cleveland's radio room at 12:57 p.m. A pipe repair crew arrived on the job site at 1:15 p.m. and shut down the sixteen-inch main. At 8:15 p.m. Cleveland's dispatcher notified Richmond Heights via fax that the repairs to the water system were completed and that Richmond Heights should see that the right of way was secured and repaired.

In order to repair the water main break Cleveland excavated an area that measured seven feet by seventeen feet. Between August 3 and 10, 1993, repairs were performed to the affected area of Richmond Rd., which cost Richmond Heights $39,174. On September 13, 1993, Richmond Heights submitted an

invoice to the Cleveland Division of Water and demanded payment for $39,174. Cleveland refused to pay the invoice based on Section 13.01 of the contract.

Richmond Heights prayed for the following judgment against Cleveland: (a) $39,174 for restoring Richmond Rd. to its previous condition before the water main leak, (b) a declaration that Section 7.03 obligates Cleveland in the instant case and in the future to reimburse Richmond Heights when Richmond Heights restores to previous condition the easements and streets after repair of a water main break, and (c) a declaration that Section 13.01 does not prevent Richmond Heights in the instant case or in future cases from being reimbursed for restoring to previous condition the easements and streets after repair of a water main break.

The trial court granted judgment in favor of Richmond Heights in the amount of $39,174 plus interest. The trial court entered a declaratory judgment in favor of Richmond Heights stating that Section 7.03 of the agreement obligated Cleveland in the instant case and in the future to reimburse Richmond Heights when Richmond Heights restores to previous condition the easements and streets after repair of a water main break. The trial court also declared that Section 13.01 does not prevent Richmond Heights in the instant case or in future cases from being reimbursed for restoring to previous condition the easements and streets after repair of a Cleveland water main break.

Cleveland's sole assignment of error states:

"The trial court erred in granting summary judgment to Richmond Heights and in denying summary judgment to Cleveland where the governing provisions of the parties' water service agreement barred Richmond Heights' claim for reimbursement of all expenses incurred following a water main break as a matter of law."

Cleveland maintains that the trial court erred when it granted Richmond Heights' motion for summary judgment and denied its motion for summary judgment because the governing provisions of the water service agreement barred Richmond Heights' claim for reimbursement of all expenses incurred following a water main break as a matter of law. Specifically, Cleveland asserts that Section 13.01 prohibits claims for damages to the affected area caused by the flow of water that arose before Cleveland had notice of the leak and a reasonable period of time to cure the leak. Cleveland also claims that the trial court misapplied Section 7.03.

Generally, courts surmise that the intent of the parties to a contract resides in the language they select to place in the agreement. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501; *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411. When

terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin, supra; Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. The Supreme Court of Ohio set forth a test for determining whether contract terms are ambiguous in *Alexander,* at paragraph two of the syllabus, which states: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the fact or overall contents of the instruments."

The sections in dispute state:

"Article 7, Right to Use Streets, Water Mains and Equipment

" * * *

"7.03 The surface easements and streets shall be restored to previous condition (after laying, extending, repairing and maintaining water mains) by MUNICIPALITY [Richmond Heights] at PURVEYOR'S [Cleveland's] expense unless otherwise agreed to in writing by MUNICIPALITY and PURVEYOR."

"Article 13, Damage to System and Release of Liability

"13.01 MUNICIPALITY [Richmond Heights] agrees to make no claim against PURVEYOR [Cleveland] on account of any break or leak in any water main, or fire hydrant in any public street, highway or easement which claim arises before PURVEYOR [Cleveland] has notice of such leak and before PURVEYOR [Cleveland] has had a reasonable period of time to act after such notice is received to cure any such condition."

Richmond Heights claims that Section 7.03 means that Cleveland is responsible to reimburse it the costs of placing the street in its previous condition after repairing the water main leak. Richmond Heights also asserts that Section 13.01, which covers claims for damages, does not preclude the reimbursement agreed upon in Section 7.03.

Cleveland argues that under Section 7.03, it is responsible only for the cost to fix the part of the road it had to excavate in order to repair the water main leak. Cleveland argues that pursuant to Section 13.01 it is not responsible to pay for the damages caused by the water main leak because it fixed the leak in a reasonable period of time after it received notice of the leak.

■ After a thorough review of the entire contract we find that Section 13.01 must be read in *pari materia* with Section 7.03. Section 7.03 does state that Cleveland will reimburse Richmond Heights for restoring streets to their previous condition after repairing a water main. However, Section 13.01 is unambiguous and clearly states that Richmond Heights agreed not to make a claim for

damages against Cleveland for a water main leak which arises before Cleveland has notice of the leak and before Cleveland has had a reasonable time to cure the condition. We find no reason why Section 13.01 should not be applicable to Section 7.03.

Furthermore, the language in Section 7.03 clearly indicates that the street will be restored to its previous condition at Cleveland's expense "unless otherwise agreed to in writing by MUNICIPALITY and PURVEYOR." We find that Section 13.01 is the "other writing" agreed to in Section 7.03.

Accordingly, we hold that Section 13.01 must be read in *pari materia* with Section 7.03 and that the trial court erred when it entered declaratory judgment to the contrary.

Next, we must address the trial court's granting of Richmond Heights' motion for summary judgment. It is axiomatic that a motion for summary judgment shall only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment shall not be granted unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

Moreover, upon motion for summary judgment pursuant to Civ.R. 56, the burden of establishing that material facts are not in dispute and that no genuine issue of fact exists is on the party moving for summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. However, in that Civ.R. 56(E) requires that a party opposing a supported motion set forth specific facts showing that there is a genuine issue for trial, such a party must so perform if it is to avoid summary judgment. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph seven of the syllabus.

Viewing the underlying facts in a light most favorable to Cleveland we conclude that genuine issues of material fact exist as to the condition of the road before the water main leak, the amount of damage the water main leak caused before Cleveland was made aware of the leak, and whether Cleveland acted promptly to repair the leak pursuant to Section 13.01.

We therefore find that summary judgment should not have been granted because material issues of fact exist. Cleveland's assignment of error is sustained with respect to the claim that Richmond Heights' motion for summary

judgment should not have been granted, and overruled with respect to its claim that its motion for summary judgment should have been granted.

*Judgment reversed*
*and cause remanded.*

BLACKMON and PORTER, JJ., concur.