OPINION
Plaintiff-appellant, Malcor Group, Inc., dba Executive Office Place, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee Application Link, Incorporated.
In February 1996, defendant entered into an office services agreement with plaintiff to rent office space from plaintiff. The agreement was to expire on March 31, 1998. Pursuant to paragraph 20 of the agreement, "[n]o later than 60 days before the end of its Office Services Agreement, [defendant] must advise [plaintiff] regarding renewal. If [defendant] does not advise [plaintiff] otherwise by that time limit, then the Office Services Agreement will be renewed, at [plaintiff's] option, for the same term as in the original agreement, at the rates then established by [plaintiff] for contracts. * * *"
On January 28, 1998, plaintiff's center manager, Samantha Peed, sent defendant's president, Michael Reed, a letter informing him that pursuant to paragraph 20, the agreement between the parties would renew as of February 1, 1998. As a result of that letter, Reed met with plaintiff's president, Frank Fabish ("Fabish"), on February 13, 1998. At the meeting, Reed and Fabish discussed the possibility of defendant's renting more or different space. Thereafter, by letter dated February 27, 1998, Fabish not only set forth proposals for alternate space, but also informed Reed that the agreement had been renewed. Reed responded with a letter on March 2, 1998, informing plaintiff that defendant previously had indicated it would be vacating the premises and would not renew the agreement. By reply letter dated March 13, 1998, Fabish advised Reed that defendant was responsible for the total amount due under the renewed lease.
On April 23, 1998, plaintiff filed a complaint against defendant seeking recovery for defendant's breach of the renewed lease agreement; defendant counter-claimed for recovery of its security deposit. On cross-motions for summary judgment, the trial court granted defendant's motion and denied plaintiff's motion. Specifically, the trial court found that defendant had informed plaintiff as early as March 1997 that it may want out of the current lease agreement, and thus had complied with the lease requirement that defendant advise plaintiff "regarding renewal." Accordingly, the court found plaintiff was unable to exercise its option to renew the agreement. The trial court also concluded that even had defendant not properly advised plaintiff, plaintiff's option to renew the agreement did not automatically renew. Because plaintiff did not take an affirmative act to exercise the option, the trial court determined the lease agreement was not renewed. Given those conclusions, the trial court granted judgment to defendant on its counterclaim, finding defendant entitled to return of its security deposit. Plaintiff appeals, assigning the following errors:
 I. THE COMMON PLEAS COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXISTED REGARDING PROPER NOTICE OF TERMINATION AND RENEWAL PURSUANT TO AGREEMENT BETWEEN THE PARTIES.
 II. THE COMMON PLEAS COURT ERRED IN CONSTRUING CONTRACT LANGUAGE AGAINST A SPECIFIC PROVISION IN THE CONTRACT REGARDING CONSTRUCTION.
In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial.Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986],477 U.S. 317, approved and followed).
Plaintiff's first and second assignments of error are interrelated, and we address them jointly. Together they contend the trial court erred in finding (1) defendant properly advised plaintiff regarding renewal, and (2) plaintiff improperly attempted to exercise its option to renew the agreement.
The construction and interpretation of written contracts is a question of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. The objective of the court in construing the agreement is to ascertain the intent of the parties, as that intent is evidenced in the language of the writing. Scartz v. Scartz (Apr. 25, 1989), Franklin App. No. 88AP-724, unreported; Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the contract, and common words in that contract will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall content of the instrument. Foster Wheeler Enviresponse,Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353,361.
As noted, paragraph 20 of the agreement provides that no later than sixty days before the end of the agreement, defendant must advise plaintiff regarding renewal; if defendant failed to do so, the agreement would be renewed, at plaintiff's option. The trial court concluded defendant had advised plaintiff regarding renewal, rendering any attempted renewal ineffective; plaintiff, by contrast, contends defendant failed to comply with the requirement, permitting plaintiff to renew the agreement.
According to the evidence supplied in connection with the summary judgment motions, in April 1997, Troy Fabish, Fabish's son ("Troy"), took Reed out to other office space plaintiff was developing to see if Reed was interested in that space. As early as that date, Reed informed Troy he was not happy with the current space and he needed additional space. In response, plaintiff suggested other additional space in September 1997, and again Reed told Troy his current office space was not large enough and was not working out. Although Troy acknowledges Reed mentioned he needed more space and wanted to explore his options, Troy stated Reed never made any statements regarding terminating defendant's lease with plaintiff.
The trial court found that through the conversations between Reed and Troy in April and September 1997, Reed advised regarding renewal in satisfaction of the requirements found in paragraph 20 of the agreement. As the trial court explained, the conversations demonstrated plaintiff knew defendant, at a minimum, desired a change in the agreement: "In any case, [plaintiff] had knowledge that [defendant] did not intend to proceed with a renewal of the first [agreement] in its original form." (Decision, p. 7.)
The lease agreement does not define "advise." When common words are not defined in a contract, they are to be construed according to the plain and ordinary meaning of the word.Alexander, supra. "Advise" is defined as "to give information or notice to." Webster's Third New International Dictionary (1961) 32. "Information" is defined as "the communication or reception of knowledge or intelligence * * *: * * * knowledge communicated by others or obtained from investigation, study, or instruction: knowledge of a particular event or situation * * *." Id. at 1160. "Notice" is defined in the same dictionary as "formal or informal warning or intimation of something: * * * a warning, announcement, or intimation given a specified time before the event to take place: * * * notification by one of the parties to an agreement or relation * * * of intention of terminating it at a specified time * * *." Id. at 1544.
The purpose of the "advise regarding renewal" clause of the agreement is to inform plaintiff whether it would need to find a new occupant for the office space defendant was occupying. Unquestionably, the clause could have been written more tightly, but the parties apparently agree that pursuant to that language, defendant was to advise plaintiff if it intended to vacate the premises. See, e.g., defendant's March 2, 1998 letter to plaintiff.
Two factors suggest the trial court properly determined defendant fulfilled his obligation to "advise regarding renewal." Initially, Reed's conversations with Troy were sufficient to inform Troy that the space defendant was occupying would be insufficient when defendant added staff: as early as about one year into the agreement, Reed advised Troy that the current makeup of the office space was not working for defendant. In response, Troy wanted to try to work out something else. Indeed, nearly every time Reed mentioned the inadequacy of the lease space, plaintiff's representatives responded by suggesting Reed look at alternative or additional space. As a result, plaintiff knew defendant would not be renewing the agreement for its original space, and thus the purpose of the language at issue was met through Reed's conversations with plaintiff's representatives.
Secondly, any lack of finality in Reed's talks with plaintiff arose because plaintiff responded to Reed with suggestions that Reed consider additional space with plaintiff. The natural byproduct of that response was Reed's inability to definitively say whether he was vacating the space, as he did not know what form plaintiff's proposal would take. The facts before the trial court indicate such a scenario until the last of the correspondence between the parties. On January 29, 1998, Peed wrote to defendant advising that the agreement was being renewed. The letter was delivered to defendant while Reed was in Washington, apparently entering into a different agreement with plaintiff regarding other space. When Reed returned to his office, a date less than sixty days before the end of the agreement, he contacted plaintiff with his concerns about the substance of the letter, and a meeting followed on February 13, 1998 to discuss the situation. At the meeting, Fabish asked for an opportunity to put a proposal together. On February 27, 1998, Fabish responded with a letter that not only enclosed layouts for expansion, but at the same time noted that the agreement had renewed. While plaintiff understandably wanted to convince defendant to stay in the space, it at the same time rendered Reed's statements somewhat tentative because Reed did not know whether plaintiff might propose an expansion that would keep defendant in the leased space.
In the final analysis, however, Reed met the requisites of the agreement when he advised Troy that the space was not working. Plaintiff understood Reed would not be renewing the agreement; it instead proposed alternates for Reed's consideration, none of which was satisfactory to defendant, and any of which would have required a different agreement.
Plaintiff nonetheless contends that even if defendant advised regarding renewal, defendant failed to comply with the notice requisites of paragraph 27 of the agreement, which states:
 Notice to [plaintiff] must be given * * * at 65 East State Street, Suite 1000, Columbus OH 43215. Notice must be by personal delivery, receipted, or by certified mail.
Arguably, the notice provisions do not apply to the clause regarding renewal because that language does not require notice to plaintiff, but only that defendant "advise" plaintiff regarding renewal. However, even if the notice provisions apply, Troy admitted to conversations with Reed in which Reed advised that the space was not adequate. Plaintiff thus admittedly had notice in person and received the intended benefit of the notice provisions.
Finally, even if defendant did not adequately advise regarding renewal, plaintiff did not properly renew the agreement. As noted, plaintiff first attempted to renew the agreement by letter dated January 28, 1998, advising defendant that pursuant to paragraph 20, the agreement would renew effective February 1, 1998. Plaintiff admits the January 28 letter was insufficient to exercise the option to renew the contract because it was written before the sixty day limit expired.
Plaintiff, however, contends that either at the February 13 meeting or in the February 27 letter, Fabish properly exercised the option to renew. Fabish met with Reed on February 13 and discussed defendant's need for more office space, but contrary to plaintiff's contentions, the evidence does not reflect that Fabish ever notified Reed at that meeting that Fabish was going to exercise the option to renew the agreement. Fabish's February 27, 1998 letter referenced the renewal as an event completed at some unstated time in the past. Unexplained, that letter arguably may have sufficed to renew the agreement. Fabish, however, went on to explain the renewal in his March 13, 1998 letter to Reed. In addition to advising Reed that defendant was responsible for the full twenty-six months of renewal, Fabish reminded Reed that as he was "officially notified the first week in February, the Office Services Agreement between Executive Office Place and Application Link Incorporated renewed on February 1, 1998." By the evidence before the trial court, the reference can be to nothing but the untimely, ineffective January 28, 1998 letter. Accordingly, plaintiff did not renew the agreement at a time allowed under the provisions of the agreement.
Plaintiff nonetheless suggests the trial court improperly construed the provisions of the agreement in defendant's favor in reaching its decision. Plaintiff admittedly drafted the agreement, and language typically is construed against the one who drafts the document. Plaintiff argues to the contrary, pointing to paragraph 30 of the agreement which states that in the event defendant fails to question any provision of the agreement, any ambiguities defendant later raises will be construed in plaintiff's favor. Even if such a clause be valid, the trial court's decision did not involve construing the provisions of the agreement in favor of one party or the other: the parties agreed what the "advise regarding renewal" language meant. Rather, the trial court was required to determine whether, as a matter of law, defendant informed plaintiff of its intent to vacate and, if not, whether plaintiff properly renewed the agreement. For the reasons stated here, the trial court reached the proper resolution of both issues.
For the foregoing reasons, plaintiff's two assignments of error are overruled, and the judgment of the trial court is affirmed.
 ________________ BRYANT, J.
TYACK and PETREE, JJ., concur.