JOURNAL ENTRY AND OPINION
This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
Appellant, Scott A. Montgomery ("Montgomery") appeals the trial court denying his motion for summary judgment and granting the motion of appellee Rojek Marketing Group Inc. ("Rojek"). For the reasons set forth below, we reverse.
Rojek is a marketing consulting enterprise located in Canton, Ohio. In June 1994, Rojek, through its president, extended a written offer of part-time employment to Montgomery. What the parties mutually refer to as the Letter Agreement ("Agreement") stated:
1. DEFINITION OF THE RELATIONSHIP
 Effective June 1, 1994, The Rojek Marketing Group, Inc. will employ Scott Montgomery on a part-time basis as a Senior Consultant, reporting to Lorraine Rojek, President.
* * *
3. COMPENSATION AND BENEFITS
 With respect to compensation for the professional services rendered, The Rojek Marketing Group, Inc. will pay you biweekly 60% of gross revenue generated from chargeable client hours.
* * *
4. CANCELLATION
 Both parties reserve the right to cancel this agreement with 30 days written notice.* * *
5. MISCELLANEOUS
 This Letter of Agreement can be reviewed as often as either party deems necessary. It can only be modified in writing and signed by both parties.
Montgomery accepted the terms presented in the Agreement by written acknowledgment on June 9, 1994. From the inception of the Agreement, Montgomery worked for Rojek at the mutually agreed upon rate of $90.00 per hour, based on sixty percent of client chargeable hours, which originally were set at $150.00. At some point between December 15, 1999 and December 29, 1999, appellee presented its "Year 2000 Business Plan" ("Plan") to all of its employees, including Montgomery. In the Plan, Rojek specified that "[a] new compensation system will be effective Jan. 2000."
The Plan further explained that "[t]his system replaces the current compensation model (which may be tied to client chargeable hours)* * *" and it also included a new compensation model specific to Montgomery. The parties agree that the Plan implemented an increase in the hourly rate for Rojek's clients from $150.00 to $185.00 per hour, but Rojek continued to pay Montgomery at the hourly rate of $90.00. On January 10, 2000, Rojek sent Montgomery a letter proposal reflecting the Plan's revised compensation terms. Montgomery never accepted the proposed Plan, thus leaving the Agreement's compensation terms in place.
On February 4, 2000, Rojek, in compliance with the Agreement, sent Montgomery a letter indicating the termination of his employment as of March 6, 2000. Both Montgomery and Rojek agree that the February 4th letter constituted a proper notice of termination under the Agreement and that Montgomery's last day of employment was March 6th. The parties, however, part company on the issue of Montgomery's rate of pay between January 1, 2000, the date the Plan took effect, and March 6, 2000, when Montgomery's employment ended.
Montgomery argues that he should have been paid at the hourly rate of $111.00 based on the new client hourly rate in the Plan, instead of the $90.00 per hour, based on the old client hourly rate of $150.00, a difference of $21.00 per hour. He argues that because he worked a total of 297 hours between January 1, 2000 and March 6, 2000, he should be paid an additional $6,237.00. Montgomery maintains that because the Plan increased the client hourly rate from $150.00 to $185.00, his hourly rate, as set forth in the Agreement, should have been calculated at "60% of [the] revenue generated from chargeable client hours." According to Montgomery, Rojek's refusal to pay him the $6,237.00 is a unilateral breach of the Agreement. The Common Pleas Court granted Rojek's motion for summary judgment, and Montgomery appealed. He presents two interrelated assignments of error which we address together in the discussion below.
FIRST ASSIGNMENT OF ERROR:
 The trial court erred by denying Plaintiff's Motion for Summary Judgment on the grounds that the plaintiff failed to support his motion for summary judgment with any evidence cognizable under Civ.R. 56(C). The record discloses that the contract at issue was attached to the Complaint and, further, the Motion for Summary Judgment was supported by, inter alia, plaintiff's affidavit with exhibits.
SECOND ASSIGNMENT OF ERROR:
 The trial court erred by granting defendant's Motion for Summary Judgment. The court ignored the plain language of a clear and unambiguous contract, instead resorting to contract interpretation and extrinsic evidence.
Rule 56(C) of the Ohio Rules of Civil Procedure provides that summary judgment is proper only if the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the non-moving party, that reasonable minds can come to but one conclusion and that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. Under the Rule and the controlling case law of this state, the moving party must support the motion with affirmative evidence in order to meet its burden of proving that no genuine issue of material fact exists for trial. Civ.R. 56;Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115, 510 N.E.2d 1108.
We review the order granting summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; McManamon v. H R Mason Contrs. (Sept. 13, 2001), Cuyahoga App. No. 79014, unreported, 2001 Ohio App. LEXIS 4068. Summary judgment should not be granted where the facts are subject to reasonable dispute. The improper grant of summary judgment "precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion." Shaw v. Central Oil Asphalt Corp. (1981),5 Ohio App.3d 42, 44, 449 N.E.2d 3.
If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Davis v.Loopco (1993), 66 Ohio St.3d 64, 609 N.E.2d 144; Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146; Donelan v.Keybank (Mar. 23, 2000), Cuyahoga App. No. 75878, unreported, 2000 Ohio App. LEXIS 1184.
In the case at bar, the Agreement clearly states that, with "30 days written notice," either party could "cancel this agreement." We find no ambiguity in this termination provision. We find equally clear that the Agreement expressly supports Montgomery's argument that his rate of compensation would increase if the client hourly rate increased. The Agreement limits the specific percentage in the Agreement, which "can only be modified in writing and signed by both parties." The base, however, is relative to chargeable client hours.[1] Therefore, when the client hourly rate was increased, Montgomery's compensation automatically increased to the $111.00 rate.
From the record before us it is clear that the parties never agreed to alter the original terms of the Agreement. The Plan is not a written modification of the Agreement because neither Montgomery nor Rojek ever signed the Plan or any document relating thereto. It is undisputed that Montgomery had an opportunity to accept the Plan and the new terms of compensation, but he did not.
Contrary to the argument set forth by Montgomery, we do not accept the claim that the trial court referred or even had to refer to any "extrinsic" evidence in order to resolve the merits of his or Rojek's motion for summary judgment. The Agreement is unambiguous about the precise percentage and what constituted the base of Montgomery's rate of pay, as well as the exclusive manner in which it could be changed. Abiding by the strict terms of the Agreement, Rojek, within the 30-day time frame, notified Montgomery of its desire to terminate the Agreement. Accordingly, looking only to the four corners of the Agreement, we conclude that from January 9, 1994 through and including March 6, 2000, the rate of sixty percent continued unchanged, but since the client rate changed he should be paid $111.00 per hour (sixty percent of the new client rate of $185.00). As a result, we agree with Montgomery's claim that Rojek breached the Agreement when it failed to increase his hourly rate at the point that it increased its hourly rate for clients. The Agreement does not prohibit Rojek from changing what it charges its clients, up or down. The Agreement does, however, prohibit Rojek from altering the formula for computing Montgomery's compensation absent a mutual written modification. That formula provided a specific percentage of sixty percent and a variable base. Thus Rojek breached the Agreement when it refused to use the new base to compute Montgomery's pay.
Summary judgment in favor of Rojek was not proper, therefore, because Rojek did not use the new base when it paid $90.00 per hour for the 297 hours Montgomery worked in the year 2000. From the clear and certain terms on the face of the Agreement, reasonable minds could not conclude otherwise. There are no genuine issues of material fact concerning Montgomery's proper rate of compensation. Accordingly, appellant's assignments of error are sustained and judgment entered in favor of Montgomery in the amount of $6,237.00.
Judgment accordingly.
This cause is reversed and judgment entered for appellant.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] We note that the Agreement says "60% of the gross revenuegenerated from chargeable client hours. (Emphasis added.) Since neither side disputes the calculations based on the pre-Plan $150.00 rate, we conclude that the number of chargeable client hours and the actual gross revenue generated from those hours are not in dispute. Both Montgomery and Rojek, from 1994 up to and including the positions presented in this appeal, have conducted themselves as if Montgomery's pay rate would be a percentage of the chargeable client hourly rate. The only issue is whether the earlier or new client rate applies.