JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant, David Norgard, appeals the trial court's decision granting summary judgment in favor of defendant-appellee, Brush Wellman. Having reviewed the arguments of the parties and the pertinent law, for the reasons that follow, we uphold the trial court and deny the appeal.
 I. {¶ 2} Plaintiff-appellant, David Norgard ("appellant") started working for defendant-appellee, Brush Wellman ("Brush Wellman") on May 11, 1981. Shortly after being hired, appellant developed a reaction to the beryllium fluoride manufactured at the Brush Wellman plant in Elmore, Ohio. On October 14, 1981, the parties executed a memorandum of agreement ("agreement") which stated that Brush Wellman would pay appellant a guaranteed wage under two possible circumstances: (1) if Brush Wellman cannot provide employment to appellant, or (2) if appellant is "unable to work." The agreement provided that the amount of income shall be $10.66 per hour when appellant is employed with Brush Wellman or $1,848.00 per month when Brush Wellman cannot provide employment or the employee is unable to work. Brush Wellman only paid appellant in lieu of working when the company could not find employment for appellant.
In 1981, shortly after the agreement was executed, appellant was laid off. Appellant was laid off because there was no work available, however, he did begin receiving payments at this time. In 1984, Brush Wellman found a job for appellant and recalled him. Appellant worked as an hourly employee from 1984 to 1992. In 1992, appellant expressed dissatisfaction with his position and made a formal written request to be removed from his position as Team Leader-Janitor. In 1992, appellant was placed on a non-disabling leave of absence and received income payments from 1992 through 1996.
 {¶ 3} Therefore, from 1981 to 1996, Brush Wellman either provided employment to appellant or paid appellant. In 1996, Brush presented several employment opportunities to appellant and called him back to active work. Appellant, however, was not interested in any of the positions. In January of 1997, Brush Wellman stopped paying appellant, because he refused to work at any of the positions that Brush Wellman had presented. On December 13, 1999, appellant filed a claim in common pleas court.
 {¶ 4} On October 2, 2002, before the trial was scheduled to take place, Brush Wellman moved for summary judgment. The trial court granted the motion for summary judgment on October 3, 2002, before the trial was scheduled to begin. On October 15, 2002, appellant appealed the trial court's granting of Brush Wellman's motion for summary judgment.
 II. {¶ 5} Appellant's sole assignment of error states that "The trial court erroneously interpreted the memorandum of agreement and, based on that misinterpretation, erroneously granted summary judgment to Brush Wellman on Norgard's breach of contract claim."
 {¶ 6} An appellate court applies the same test as a trial court, which test is set forth in Civ.R. 56(C), which specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United Inc., (1977),50 Ohio St.2d 317, 327.
 {¶ 7} If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241. "Where terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Long BeachAss'n v. Jones (1998), 82 Ohio St.3d 574, 577.
 {¶ 8} With the above standards in mind, we review the matter before us. The 1981 agreement that is the subject of this dispute states that Brush Wellman is obligated to pay appellant under two circumstances: (1) when Brush Wellman cannot provide employment or (2) when the appellant is "unable to work." The fact that Brush Wellman is able to provide employment at this time is not in dispute. Therefore, we now turn our attention to the second condition, the appellant's ability to work. The dictionary defines "unable" as lacking the necessary power or resources.[1]
 {¶ 9} The trial judge used the plain meaning of "unable to work" when he determined that there was no specific evidence that the appellant was unable to work during 1997, and thereafter. If the intent of the parties was to pay the appellant in all circumstances, they easily could have done so by eliminating the reference to the two conditions.[2] The second condition of the contract language clearly states that the appellant is only to be paid if he is unable to work.
 {¶ 10} The factual record demonstrates that appellant was able to work during 1997, and thereafter. The appellant does not dispute that he worked for the support group and various painting jobs during the period.[3] Furthermore, the appellant admitted that he cannot demonstrate that he is generally unable to work for any health reason. The appellant does not maintain that he is incapable of working.[4]
 {¶ 11} Brush Wellman has offered appellant several employment alternatives, including a computer automated drafting position at an off-site facility, a data-entry position from the appellant's home, and positions in graphic arts at the Toledo Museum of Art and at the Red Cross. The appellant has refused to work at any of these positions. However, the appellant has the ability to work and has done so in the recent past. Furthermore, he has been presented with several different opportunities to do so by Brush Wellman. However, appellant has made the conscious choice not to do so. The second condition in the agreement does not say anything about continually presenting the appellant with job opportunities until he finds one that is acceptable. The agreement only states that Brush Wellman is to pay appellant when the company cannot provide employment or when the appellant is unable to work. Ability is not defined by preference.
 {¶ 12} The trial court previously stated that "the contract is indeed unambiguous. It says unable to work, and that's what it means. Not unable to do the bidding of Brush Wellman, but unable to work. Plain English."[5] On October 2, 2002, before the trial was scheduled to take place, Brush Wellman moved for summary judgment. The trial court granted the motion for summary judgment, stating that there was "no specific evidence that Mr. Norgard was unable to work during 1997 . . ."[6]
Furthermore, the record has demonstrated that the appellant actively worked throughout the period at issue. Appellant worked full-time for Benchmark Prints in 1995. In addition, he worked as a carpenter's assistant in 1997-98, for the Oil, Chemical and Atomic Workers International Union in 1998, and at an IGA grocery store.[7]
 {¶ 13} The trial court properly determined that the appellant was physically able to work, however, he chose not to accept the many different opportunities that Brush Wellman presented. The appellant previously stated that he is not interested in working for Brush Wellman under any circumstances.[8]
 {¶ 14} The 1981 agreement stated that Brush Wellman was to pay the appellant if Brush was unable to provide employment or if the appellant was unable to work. However, the evidence shows that the appellant was able to work, and in fact, did so on several occasions. Therefore, based on the conditions of the agreement, Brush Wellman was not required to pay the appellant after he refused to work in any employment that Brush Wellman presented.
 {¶ 15} In the case sub judice, there is no material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion regarding the plain meaning of the term "unable to work" in the 1981 agreement. Based on the extensive evidence in the record, the unambiguous language, the plain meaning of "unable to work" in the 1981 agreement, and the appellant's repeated refusal of employment, we hold that the trial court properly granted Brush Wellman's motion for summary judgment.
 {¶ 16} The appellant's sole assignment of error is not well taken and the appeal is, therefore, denied.
ANN DYKE, P.J. AND FRANK D. CELEBREZZE, JR. J., CONCUR.
[1] Funk and Wagnalls, New Practical Standard Dictionary, Volume Two, defines unable as: Unable. Adj. 1. Lacking the necessary power or resources; not able: usually used with an infinitive; as, unable to walk.
[2] The 1981 agreement stated that Brush Wellman will pay appellant provided that the following two conditions occur: (1) Brush cannot provide employment or (2) Norgard is unable to work.
[3] As noted on page 54 of the transcript, the court asks the plaintiff's attorney "Is there any dispute by the plaintiffs to these employments of the plaintiff?" to which the plaintiff's attorney responds: "No, your honor * * *"
[4] On page 329, the plaintiff's attorney states "* * * the plaintiff has not maintained in this lawsuit that he is incapable of working." See Tr. 54, 329.
[5] See Tr. at 302.
[6] See Tr. at 333.
[7] See Tr. at 53.
[8] Appx. Ex. A at 440, 443.