[Cite as *State ex rel. Dann v. Nacional*, 2011-Ohio-2818.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us


STATE OF OHIO, ex rel. ATTORNEY GENERAL MARC DANN

      Plaintiff/Counter Defendant

      v.

TABACALERA NACIONAL, S.A.A.

      Defendant/Counter Plaintiff
      Case No. 2008-09848-PR

Judge Clark B. Weaver Sr.

DECISION


{¶ 1} On March 15, 2011, defendant/counter plaintiff, Tabacalera Nacional, S.A.A. (Tanasa), filed a motion for summary judgment pursuant to Civ.R. 56(C). On April 1, 2011, plaintiff/counter defendant, State of Ohio, ex rel. Attorney General Marc Dann (the State), filed a combined memorandum contra and cross-motion for partial summary judgment. Tanasa filed a response on April 8, 2011, and the State filed its reply on April 29, 2011. A non-oral hearing on the parties' motions for summary judgment was held on May 2, 2011.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable

minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." See also *Gilbert v. Summit County,* 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶ 4} This case concerns a settlement agreement between the parties relating to the sale of cigarettes in Ohio. It is not disputed that Tanasa is a Peruvian tobacco manufacturer engaged in the sale of cigarettes in Ohio. As such, Tanasa is required by R.C. 1346.02 either to participate in a 1998 Master Settlement Agreement (MSA) or to make deposits into a "qualified escrow fund" (escrow fund). Tanasa elected not to participate in the MSA and began making deposits into the escrow fund. On June 23, 2003, the State brought suit against Tanasa alleging that Tanasa had failed to make sufficient deposits. That suit was ultimately settled and dismissed by the parties pursuant to the terms of a March 1, 2004 settlement agreement. In return for Tanasa's promise to make the appropriate deposits into the escrow fund, the State agreed to dismiss the action and release Tanasa from further liability.

{¶ 5} On December 10, 2007, the State filed a complaint in the Franklin County Court of Common Pleas alleging that Tanasa failed to deposit the required amount into the escrow fund in violation of R.C. 1346.02. On August 29, 2008, Tanasa filed a counterclaim seeking a declaratory judgment and alleging breach of contract. The subsequent filing of a petition for removal effected the removal of the entire case to this court. On December 3, 2008, the State filed an amended complaint seeking damages for breach of settlement agreement.

{¶ 6} According to the terms of the settlement agreement, Tanasa was required to pay two sums of money to the State: $100,000 by March 15, 2004, and a "proper 2003 escrow deposit" no later than April 15, 2004. It is not disputed that Tanasa timely made payments; however, the parties now disagree whether Tanasa's $440,960.29 deposit represents the "proper 2003 escrow deposit" as that term is used in the parties' agreement.

{¶ 7} The settlement agreement contains the following language:

{¶ 8} "3.1 For and in consideration of the terms, conditions and releases granted in this Agreement, the Parties agree as follows:

**{¶ 9}** "3.2 The sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "Settlement Payment") shall be paid by or on behalf of Tanasa to the State on or before March 15, 2004. The agreed order of dismissal with prejudice attached hereto as Exhibit "1" shall be entered within seven days of Tanasa remitting the Settlement Payment to the state.

**{¶ 10}** "3.3 The State, does hereby remise, release and forever discharge Tanasa, its officers, directors, affiliates, shareholders, employees, attorneys, agents, successors and assigns, of and from all claims and defenses which were or could have been raised by the State in the Litigation.

**{¶ 11}** "3.4 Tanasa, for itself, its officers, directors, shareholders, employees, attorneys, agents, successors, and assigns, does hereby remise, release and forever discharge the State of and from all claims and defenses which were or could have been raised by Tanasa, its officers, directors, affiliates shareholders, employees, attorneys, agents, successors or assigns in the Litigation.

**{¶ 12}** "3.5 *Tanasa shall not sell Cigarettes (as that term is defined in the Model Escrow Statute) in the State directly or through an intermediary from the Effective Date through March 1, 2009*, including, but not limited to the following brands: Argent, Golden Beach and Unify. Tanasa agrees that it will not attempt to certify any Cigarette brands for sale in Ohio from the Effective Date through March 1, 2009.

**{¶ 13}** "3.6 *After making its proper 2003 escrow deposit for the State no later than April 15, 2004, Tanasa shall not be required to make any further escrow deposits for the State until such time, if ever, that it sells Cigarettes in the State directly or through an intermediary.*" (State's Exhibit A.) (Emphasis added.)

**{¶ 14}** The parties agree that the proper escrow deposit is the multiple of cigarette units sold in 2003 and a predetermined fractional number. See R.C. 1346.02. There is no dispute that Tanasa relied upon the State to calculate the "proper 2003 escrow deposit" which it was required to make by April 15, 2004. (State's Exhibits B-2 and B-3.) The State now contends that Tanasa did not make the "proper 2003 escrow deposit" inasmuch as revised sales figures that became available to the State after April 15, 2004, show that Tanasa's initial deposit was inadequate. The State contends that the language of the agreement contemplates future payments by Tanasa. Tanasa argues that it fully performed its obligations under the settlement agreement.

**{¶ 15}** The construction of a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id. at paragraph two of the syllabus. The cardinal purpose of judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.

**{¶ 16}** "It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party. * * * Further, settlement agreements are highly favored in the law." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 1996-Ohio-158. (Citations omitted.)

**{¶ 17}** The settlement agreement specifically releases Tanasa "from all claims and defenses which were *or could have been raised by the State* in the Litigation." See Section 3.3. (Emphasis added.) In the court's opinion, an agreement that requires Tanasa to make the "proper 2003 escrow deposit no later than April 15, 2004," means that the proper 2003 escrow deposit cannot be made by Tanasa after April 15, 2004. Thus, upon review of the four corners of the settlement agreement, the court finds that the deposit of $440,960.29 was intended by the parties as a full and final settlement of Tanasa's 2003 liability.

**{¶ 18}** The State notes, however, that Tanasa has, in fact, made two subsequent escrow deposits upon the State's request. The State argues that such deposits establish a course of performance which demonstrates the parties' intent.[1] However, in construing the meaning of the parties' final written expression of agreement, evidence of a course of performance is admissible only when offered to explain or supplement the parties' written agreement. Such evidence is not admissible when it is inconsistent with

---

[1]Tanasa has admitted in its answers to the State's request for admissions (RFA) that it made an escrow deposit of $14,863.71 in May 2004, and $822.69 in September 2004, but "denies that such deposit[s] [were] made in contemplation of sales of cigarettes during calendar years 2002, 2003 or otherwise * * *." See RFA 32-33. When the State requested a significant additional deposit in 2006, Tanasa refused.

the written terms.[2] The proffered evidence of a course of performance contradicts the plain language of the settlement agreement in that it suggests that the proper 2003 escrow payment could be made later than April 15, 2004. The settlement agreement clearly requires payment of the "proper 2003 escrow" amount "*no later than* April 15, 2004." (Emphasis added.)

{¶ 19} In short, the court concludes that the language of the agreement does not require Tanasa to make 2003 escrow deposits beyond April 15, 2004. Accordingly, Tanasa cannot be held liable to the State, as a matter of law, for its failure or refusal to make any such deposits.

{¶ 20} The State next contends that Tanasa has violated Section 3.5 of the settlement agreement by continuing to sell cigarettes in Ohio beyond the effective date of the agreement, March 1, 2004. In support of this contention, the State submitted the affidavit of employee Brian Costa, who inspected the Cash and Carry Foodmart in Lancaster, Ohio on March 9, 2004, and seized four packs of "Argent Lights," the source of which has been identified as Tanasa.[3] Under the plain terms of the agreement, Tanasa agreed to make no such sales. The State argues that Tanasa's breach of its promise not to sell cigarettes in Ohio precludes Tanasa from relying on other provisions of the contract which support its position regarding the proper 2003 escrow deposit. The court disagrees.

{¶ 21} Ordinarily, the breach of a contract by one party does not relieve the non-breaching party of its duties and obligations thereunder unless the breach is material to the transaction. *Kersh v. Montgomery Developmental Ctr.* (1987), 35 Ohio App.3d 61, 62-63. Under common law, "a 'material breach' is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential

---

[2]R.C. 1302.05 provides in relevant part: "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(A) * * * by a course of performance as provided in section 1302.11 of the Revised Code * * *."

R.C. 1302.11 states, in relevant part, that "(B) the express terms of the agreement and any such course of performance, * * * shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance * * *."

[3]Tanasa's May 11, 2011 motion to strike the affidavits of Brian Costa and Barbara Gutman is DENIED as moot.

purpose of the contract or makes it impossible for the other party to perform under the contract." Williston on Contracts Chapter § 63:3.

{¶ 22} In *Kersh*, supra, the Tenth District Court of Appeals adopted the approach taken in the Restatement of the Law 2d, Contracts (1981) 237, Section 241, in determining whether a breach of contract is material. Section 241 provides:

{¶ 23} "In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

{¶ 24} "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

{¶ 25} "(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

{¶ 26} "(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

{¶ 27} "(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

{¶ 28} "(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

{¶ 29} The standard is "necessarily imprecise and flexible." Id. at Comment *a*. "[It] applies to contracts of all types and without regard to whether the whole performance of either party is to be rendered at one time or," as in this case, "part performances are to be rendered at different times." Id. "Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions, and inadvertencies should be disregarded." *Ohio Edn. Assn. v. Lopez*, Franklin App. No. 09AP-1165, 2010-Ohio-5079, ¶15, quoting *Tucker v. Young*, Highland App. No. 04CA10, 2006-Ohio-1126, ¶25.

{¶ 30} No reasonable trier of fact could find that Tanasa's alleged breach was material to the settlement. There is no question that the parties intended the settlement agreement to resolve both the State's claims and Tanasa's defenses without further litigation. (State's motion for partial summary judgment Exhibit A.) The settlement agreement requires Tanasa to pay $100,000 by March 15, 2004, and its proper 2003 escrow deposit no later than April 15, 2004. Tanasa did so. The subsequent sale of

four packs of cigarettes in a Cash and Carry Foodmart does not deprive the State of the expected benefit of the bargain. Furthermore, Section 3.5 of the agreement provides a remedy to the State should it discover the sale of cigarettes in Ohio beyond March 1, 2004.

{¶ 31} Finally, the State has presented both no evidence that Tanasa failed to cure the breach and no evidence to support a finding of bad faith. Although the State has alleged a knowing violation of R.C. 1346.02(B)(3), it has done so with respect to the 2003 escrow deposit, not the sale of four packs of cigarettes in 2004.

{¶ 32} Moreover, had the State truly believed that the breach was material, it would not have waited until 2007 to bring the instant action and it certainly would have included the relevant allegations in both its original complaint and in its amended complaint. For the foregoing reasons, the court finds that Tanasa's breach was not material, as a matter of law. Consequently, both parties shall be entitled to their respective rights under the settlement agreement and will be held to their respective obligations thereunder.

{¶ 33} In short, the court finds that the settlement agreement is both valid and enforceable upon its terms, as a matter of law. Accordingly, Tanasa is entitled to judgment in its favor as to the claims asserted by the State in the amended complaint.

{¶ 34} Turning to Tanasa's claim, "[w]hen a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim." *Tejada-Hercules v. State Auto. Ins. Co.*, Franklin App. No 08AP-150, 2008-Ohio-5066, ¶9, quoting *Shanker v. Columbus Warehouse Ltd. Partnership* (Mar. 31,1997), Franklin App. No. 96APE09-1269. Having determined that the settlement agreement is valid and enforceable as a matter of law, there is no question but that the State has breached the agreement by filing suit herein.

{¶ 35} Based upon the foregoing, Tanasa's motion for summary judgment shall be granted and the State's motion for partial summary judgment shall be denied. Accordingly, the only issue remaining for trial is Tanasa's damages.[4]

---

[4]Tanasa's March 15, 2011 motion for protective order is DENIED as moot.

# Court of Claims of Ohio

STATE OF OHIO, ex rel. ATTORNEY GENERAL MARC DANN

      Plaintiff/Counter Defendant

      v.

TABACALERA NACIONAL, S.A.A.

      Defendant/Counter Plaintiff
      Case No. 2008-09848-PR

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

A non-oral hearing was conducted in this case upon the parties' motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, Tanasa's motion for summary judgment is GRANTED and the State's motion for partial summary judgment is DENIED. Accordingly, the only issue remaining for trial is Tanasa's damages.

_____
CLARK B. WEAVER SR.
Judge

cc:

Angela M. Sullivan
Assistant Attorney General
Tobacco Enforcement Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

Christopher P. Conomy
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Kimberley A. Doucher
6065 Frantz Road, Suite 104
Dublin, Ohio 43017


GWP/LP/cmd
Filed May 20, 2011
To S.C. reporter June 7, 2011