ALEXANDER ET AL., APPELLANTS, *v.* BUCKEYE PIPE LINE COMPANY, APPELLEE.

[Cite as Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St. 2d 241.]

(No. 77-453—Decided March 29, 1978.)

244

*Messrs. Betts & Betts, Mr. Jackson E. Betts, Messrs. Noble, Bryant & Needles and Mr. Thomas F. Bryant for appellants.*
*Messrs. Baker, Hostetler & Patterson, Mr. Russell E. Leasure, Messrs. Halleck & Halleck and Mr. John C. Halleck, for appellee.*

SWEENEY, J. Three main issues are involved in this cause: Whether appellee has constructed pipe lines beyond the limits prescribed in the right-of-way agreements; whether appellee may transport various materials other than crude oil and natural gas through these pipe lines pursuant to the agreements; and whether the Court of Appeals properly affirmed the trial court's grant of appellee's motion of partial summary judgment.

Concerning the issue of the number of additional pipe lines appellee could install pursuant to the terms of the three agreements, the court finds no issue of substance arising under either the 1907 or 1947 agreements. The 1907 agreement clearly provides that only one additional pipe line could be installed, and it is uncontroverted that only one additional eight-inch line was installed pursuant to this agreement. Since only one pipe line has been installed under the 1947 agreement, there is no justiciable issue concerning the meaning of its terms with respect to the number of allowable pipe lines.

The 1911 agreement provides that the grantee has the right "* * * to lay additional lines of pipe alongside of the first line as herein provided." Evidence reflects that four additional pipe lines were installed pursuant to this agreement. Appellants contend, however, that the 1911 agreement allows the installation of a total of only three pipe lines, based on its construction of the term "alongside of."

In construing the term "alongside of" contained in the 1911 right-of-way agreement, the court notes that common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly

intended from the face or overall contents of the instrument. *First National Bank* v. *Houtzer* (1917), 96 Ohio St. 404, 406-407; *Garlick* v. *McFarland* (1953), 159 Ohio St. 539, 545; *Olmstead* v. *Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St. 2d 212, 216; *Jolliff* v. *Hardin Cable Television Co.* (1971), 26 Ohio St. 2d 103, 106-107. Furthermore, where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Paragraph one of the syllabus in *Blosser* v. *Enderlin* (1925), 113 Ohio St. 121; *Fidelity & Casualty Ins. Co.* v. *Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 569.

A careful reading of the cited language contained in the 1911 agreement indicates that the term "additional" has a numerical connotation, and the term "alongside of" has a geographical connotation. Specifically, when the term "alongside of" is read in conjunction with the preceding phrase "to lay additional lines of pipe," it is apparent that the term "alongside of" does not contain a numerical limitation, but simply indicates that the parties intended that additional lines be laid side by side or adjacent to the first line. If the parties had intended that an additional line could only be placed on either side of the first line, they could have easily so stated.

Moreover, the above construction of the term "alongside of" does not result in manifest absurdity on the basis that conceivably the appellee could lay limitless numbers of pipe lines beneath appellants' land. The 1911 agreement provides, in pertinent part, that: "* * * The Buckeye Pipe Line Company * * * hereby agrees to pay any damages which may arise to crops and fences from the laying, maintaining, operating, and removing said pipe line * * *." It is reasonable to assume that this liability-for-damages clause would discourage appellee from intruding too much into the operations of the appellants, since at a specific level of activity, appellee would more than likely be unable or unwilling to transport fuels at the higher cost.

Because the five pipe lines laid under the 1911 right-of-way agreement were installed generally parallel to each other, and because the agreement itself does not specify a certain number of lines which may be installed, the court finds that appellee did not violate the express terms of the 1911 agreement by installing four additional pipe lines.

The second major issue in this cause is whether the parties to the right-of-way agreements executed in 1911 and 1947 intended that only crude oil and natural gas could be transported through the pipe lines as opposed to the products of gasoline, two grades of fuel oil, gas oil, propane, and butane, all of which have been transported from time to time through the lines. (The pipe lines installed under the 1907 agreement transport only crude oil, and consequently pose no justiciable issue in this regard.)

Because there is no language contained in the 1947 agreement which specifies or limits which products or substances may be transported, it follows that appellee is not limited in the kinds of products it may transport through the pipe line installed under this agreement. If this court were to hold otherwise, it would be tantamount to rewriting the agreement and establishing restrictions not expressed by the parties thereto.

With respect to the terms "oil" and "gas" employed in the 1911 agreement, appellants contend that the terms are ambiguous, and that, therefore, resort must be had to extrinsic evidence in determining their meaning.

The court does not find the terms "oil" and "gas" ambiguous. The terms are descriptive in nature and have traditionally represented a specific class of products that may be transported. The popular meaning of the word "oil" appeared in Webster's New International Dictionary (1 Ed. 1927) as " * * *[a]ny of a large class of unctuous combustible substances which are liquid, or at least easily liquefiable on warming and soluble in ether, but not in water." The term "gas" was defined as "* * * any gas or gaseous mixture, with the exception of atmos-

pheric air; specif.: \* \* \* b. Any combustible gaseous mixture used for illuminating or as a fuel. \* \* \*''

It is clear that at the time of the execution of the 1911 right-of-way agreement, the words "oil" and "gas" included products in both the refined and natural states. A restriction of these terms could easily have been achieved by use of a qualifying adjective such as "crude" or "natural" Because the parties executing this agreement did not choose to qualify the terms of "oil" and "gas," we must therefore assume that they intended no restrictive meaning.

Appellants rely on the Stitt affidavit to support their limited construction of the terms "oil" and "gas" contained in the 1911 agreement. It is well-settled that although extrinsic evidence of a general custom or trade usage cannot vary the terms of an express contract, such evidence is permissible to show that the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry, not reflected on the face of the agreement. *Steel Works* v. *Dewey* (1881), 37 Ohio St. 242, 249; *State* v. *Redd* (1930), 122 Ohio St. 162, 167.

However, this court finds the Stitt affidavit insufficient to raise a genuine issue concerning the meaning of the terms "oil" and "gas." Stitt's sworn statement alone does not evince a custom or usage so widespread in the oil and gas industries as to support a valid presumption that the parties, having knowledge of the special usage, must have intended limited meanings when they employed the terms "oil" and "gas" in the 1911 agreement.

The last issue confronting this court is whether the Court of Appeals properly affirmed the judgment of the Court of Common Pleas which granted appellee's motion for partial summary judgment.

Because of our holding with respect to the first two issues in this cause, it follows that appellants' first, second, third, fifth, sixth, and eighth claims for relief as raised in their complaint raise no genuine issues of fact and

thus were properly dismissed.

In their fourth claim for relief, appellants contended that appellee was unlawfully using the pipe lines in part for storage purposes. However, there were no affidavits, depositions, or other documents offered by appellants to support their contention.

Civ. R. 56(E) expressly provides:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings * * *."

Absent any additional documentation, appellants' claim must fail.

In the instant cause, appellee submitted the affidavit of one of its managers denying that any of the eight pipe lines traversing appellants' property was used for storage purposes. Except for the allegation itself, appellants offered no affidavits or other supporting documents to show otherwise. Therefore, appellee's motion for partial summary judgment was properly granted with respect to this issue.

In conclusion, we find in construing the evidence most strongly in favor of appellants, that there were no genuine issues of fact with respect to their seven of eight claims for relief, and that appellee's motion for partial summary judgment was properly granted.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN and LOCHER, JJ., concur.

CELEBREZZE, J., dissents.