DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff Chicago West Pullman Corp. has appealed from an order that granted summary judgment to defendant Robert W. Quinn in this breach of contract case. Plaintiff has argued that the trial court incorrectly granted defendant summary judgment because he was not entitled to judgment as a matter of law. This Court affirms the order of the trial court because there were no genuine issues of material fact and defendant was entitled to judgment as a matter of law.
 I.
During the mid-1980s, Quinn worked for plaintiff as a consultant identifying business acquisition opportunities. In 1987, Quinn identified Cardinal Federal Savings and Loan ("Cardinal Federal") as a potential acquisition target.
Sometime during 1987, the Federal Savings and Loan Insurance Corporation ("FSLIC") offered Quinn a position with Cardinal Federal to attempt to rescue Cardinal Federal from its deteriorating financial condition. Quinn accepted the offer in late 1987 and was hired as Chairman of the Board and Chief Executive Officer of Cardinal Federal.
In 1988, under circumstances that are not entirely clear, Quinn's employment with Cardinal Federal was terminated. Shortly thereafter, Quinn, Cardinal Federal, and the FSLIC all became embroiled in litigation relating to Quinn's termination ("the Cardinal Federal litigation").
In 1989, during the pendency of the Cardinal Federal litigation, Quinn and plaintiff began negotiating the contract of employment that is at issue in this case. On May 22, 1989, Quinn sent plaintiff a letter summarizing the negotiations as of that date. Plaintiff responded in a letter dated June 1, 1989, stating in part:
 Relative to our mutual understanding with regard to Cardinal Federal, we have agreed presently to pay $50,000.00 directly to one of your counsel in payment of statements rendered to you for legal services relating to the law suit brought by FSLIC. We have agreed to ultimately pay up to $100,000.00 in this context and you have further agreed that if there is a final disposition which awards cash to you, we would be reimbursed, at least to the extent of such an award, up to the full amount of our advances.
* * *
 Finally, you have raised the need to address termination. I propose that either party may terminate the agreement with thirty (30) days prior notice at any time during the term of this agreement, in which event you would be entitled to a payment of $5,000 per month for the remaining portion of the original term, but not to exceed $35,000. In the event you elect to terminate, you would agree to continue to be available on a limited basis relative to any projects which are active at that time and which in our opinion require your participation.
 On June 21, 1989, plaintiff sent Quinn another letter supplementing the June 1 letter. This letter specifically stated that "[i]t is our understanding that the three of us have reconfirmed all of the other provisions of the June 1, 1989 letter, which is attached hereto." The June 21 letter was signed as "ACCEPTED" by Quinn on June 27, 1989.
Pursuant to the provisions of the June 1 letter, plaintiff eventually paid a total of $99,000 for Quinn's attorneys' fees relating to the Cardinal Federal litigation. Quinn subsequently terminated the contract in 1990 pursuant to the termination provision set forth in the June 1 letter.
In 1993, Quinn settled the Cardinal Federal litigation for $300,000 cash and a $450,000 line of credit. Quinn, however, refused to reimburse plaintiff for the $99,000 in attorneys' fees. As a result, plaintiff filed suit against Quinn. Quinn answered and moved for summary judgment, arguing that the reimbursement clause had terminated in 1990 because nothing in the contract specifically stated that it would survive termination. The trial court granted Quinn summary judgment, concluding that,
 as a matter of law, the contract entered into by the parties is unambiguous and contains the entire agreement between the parties. Thus, the Parole [sic] Evidence Rule prohibits contradicting the terms of the written contract with prior written or oral evidence. * * * Further, intentions not expressed in the written contract may not be shown by parole [sic] evidence. * * * Thus, the entire contract between the parties terminated on February 23, 1990, and Defendant is not obligated to re-pay to [plaintiff] the $99,000.
(Citations omitted.) Plaintiff has appealed from this judgment.
 II.
"In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court." McConville v. Jackson Comfort Sys., Inc. (1994),95 Ohio App.3d 297, 301. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland RefuseTransfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322.
In this case, plaintiff has argued that the contract was ambiguous concerning the issue of whether the reimbursement provision survived the termination of the contract. Therefore, plaintiff has asserted, the trial court improperly refused to consider parol evidence that would have precluded summary judgment by raising an issue of fact concerning the parties' true intentions.
According to plaintiff, the termination provision is ambiguous because it does not contain any language specifically stating that it applies to the reimbursement clause. "Common words appearing in a written instrument[, however,] will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. The termination provision provided that upon thirty days notice either party could terminate "the agreement." The term "agreement" would ordinarily refer to every part of the contract, including the reimbursement clause.
Plaintiff has also argued that, if the termination provision is interpreted to include the reimbursement clause, manifest absurdity will result. Because the reimbursement clause specifically provided that Quinn's obligation to reimburse plaintiff only arose upon "final disposition" of the Cardinal Federal litigation, according to plaintiff, the plain language of the reimbursement clause required it to continue in effect beyond the termination of the contract in direct contravention of the termination provision. There is not, however, a conflict between these provisions. Because the Cardinal Federal litigation could have been settled prior to the termination of the contract, the reimbursement provision was not rendered ineffective by the termination provision; plaintiff could have enforced the reimbursement clause if the Cardinal Federal litigation had been resolved prior to the termination of the contract. Therefore, there is no manifest absurdity from the interplay between the termination provision and the reimbursement clause.
"[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Alexander, supra, at 246. The contract in this case is clear and unambiguous, and is devoid of any indication that the parties intended for the reimbursement clause to survive the termination of the contract. The parties understood how to make an obligation survive the termination of the contract — the termination provision specifically provided that Quinn would remain available for consultation on a limited basis even after termination. Nevertheless, the parties failed to include a similar survival clause relating to reimbursement. This Court cannot create a new contract by including such a provision after the fact.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Lorain, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. ________________________________ JOHN W. REECE, FOR THE COURT
DICKINSON, J., CONCURS