DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Miller Sports Entertainment Group, Inc., Barbara Hudson and Peacola Miller, appeal the December 17, 2003 judgment entry granting appellee, Library Plaza, LLC, possession of the leased premises located at 4945 Dorr Street, Toledo, Ohio. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} The undisputed facts are as follows. On October 25, 2002, Miller Sports Entertainment Group, Inc. ("Miller Sports"), entered into a lease agreement with Library Plaza, LLC ("Library Plaza") to lease a 5,625 square feet unit in a shopping center. The unit was to be used as a restaurant (ultimately called "Chip Shots") with a "sports bar theme." Pursuant to the lease, which was negotiated over several months by the parties and their attorneys, monthly rent was approximately $4,500, and was due on the first day of each month commencing with the first month Chip Shots was open for business. Miller Sports was to make monthly common area management and maintenance ("CAM") payments of $1,171.87, and was responsible for payment of all utilities. Miller Sports was also required to repay Library Plaza for the additional improvements it made to the property. The lease also provided the following provision:
 {¶ 3} "4. LIQUOR PERMIT. Lessor acknowledges that Lessee will sell or permit to be sold on the Premises spirituous, vinous malt or any intoxicating liquor and that Lessee will strictly conform to all laws, ordinances and other regulations pertaining to such liquors. Lessor agrees that the obligations stated in this Lease are contingent upon Lessee obtaining a liquor permit from the Ohio Department of Liquor Control for the Demised Premises."
 {¶ 4} Cognovit notes, signed by appellants Barbara Hudson and Peacola Miller, secured Miller Sports' obligations.
 {¶ 5} Miller Sports first occupied the unit in November 2002. Chip Shots opened for business in June 2003. At no time during its occupancy did Miller Sports obtain a liquor permit. On September 24, 2003, Library Plaza served Miller Sports with a three-day notice to leave the premises pursuant to R.C. 1923.04.
 {¶ 6} On November 5, 2003, appellee filed its first amended complaint for forcible entry and detainer, cognovit judgment and damages. Appellee alleged that appellants failed to pay rent and other charges and make payments on the additional improvements. As an affirmative defense, appellants asserted that in accordance with the above-quoted provision, because a liquor permit had not been obtained no rent or any other charges were due.
 {¶ 7} A hearing on the action was held on December 16, 2003. Following the parties' presentation of evidence and testimony, the court granted appellee possession of the property and a writ of restitution was issued. This appeal followed.
 {¶ 8} Appellants now raise the following assignment of error:
 {¶ 9} "The trial court erred in finding that defendants/appellants were in default of the lease agreement by virtue of non payment of rent, additional improvements, and other charges due under the lease agreement and by awarding plaintiff/appellee restitution of the property."
 {¶ 10} In their sole assignment of error, appellants argue that because the condition precedent, obtaining a liquor license, was not met, appellants were not obligated to make any payments under the lease. Conversely, appellee contends that appellants waived the condition by making a rent payment and several CAM payments. Appellee further argues that construing the provision to mean that no payments were due until Miller Sports obtained a liquor permit would result in "manifest absurdity." Appellee has also filed a motion for attorneys' fees pursuant to App.R. 15 and 23.
 {¶ 11} It is a tenant of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 12} At the December 16, 2003 hearing, Herbert Fultz, managing member of Library Plaza, testified that according to the lease, rent payments were due the first day of the month following the month the restaurant opened for business. He further testified that CAM payments were due from the date of occupancy and that payments on the additional improvements were due from the date the restaurant opened. Fultz stated that he believed that the liquor permit provision was intended to allow the persons to "walk away" if they had no liquor license.
 {¶ 13} Earnest Raval Miller, president of Miller Sports and signatory to the lease, testified:
 {¶ 14} "Q: * * *. Aside from your position that you don't have to pay anything because of the rent — because there's no liquor licensee, do you dispute that you owe approximately $7000 in CAM charges?
 {¶ 15} "A: There was a — no.
 {¶ 16} "Q: Okay.
 {¶ 17} "A: Make a long story short, no.
 {¶ 18} "Q: What about the $25,000 or so of rent that Mr. Fultz testified to?
 {¶ 19} "A: Yes.
 {¶ 20} "Q: That is something that is owed?
 {¶ 21} "A: No, I dispute that.
 {¶ 22} "Q: Of the additional improvements of $265,000, isn't it true that 150,000 of that is an amount that you would agree that you — that the tenant is responsible for paying?
• * *.
 {¶ 23} "A: Yeah, I — yeah, yes."
 {¶ 24} Evidence was also presented at the hearing demonstrating that appellants made several CAM payments.
 {¶ 25} After careful review of the arguments of the parties, the lease agreement, and the applicable law, we conclude that the trial court did not err in finding that appellants were in default of the lease. Appellants admitted that CAM and additional payments were due and, in fact, made several CAM payments. If the court were to read the liquor permit provision as requiring absolutely no payments unless a liquor permit was obtained, appellants, theoretically, could have occupied the unit for the entire lease term without paying a dime. This result, we believe, would squarely fall under the "manifest absurdity" catchphrase ofAlexander v. Buckeye Pipe Line Co., 52 Ohio St.2d 241. Further, from a reading of the entire contract and the testimony at the hearing, it is clear that this was not the parties' intention. The liquor permit provision was intended as a way to allow Miller Sports to relieve itself of any further obligation under the lease if it failed to acquire a liquor permit. Accordingly, appellants' assignment of error is not well-taken.
 {¶ 26} Appellee has filed a motion for attorneys' fees with regard to this appeal. We do not believe that this appeal was frivolous as set forth in App.R. 23. Appellants' arguments, though ultimately unsuccessful, were consistent and supported by appropriate case law. Accordingly we find that appellee's motion is not well-taken and is denied.
 {¶ 27} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. We further find that appellee's motion for attorneys' fees is not well-taken and is denied. Pursuant to App.R. 24, appellants are required to pay the court costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J, Lanzinger, J., concur.