OPINION
{¶ 1} Plaintiff-appellant, Michael Vultaggio, appeals the decision of the Butler County Court of Common Pleas, granting summary judgment to defendant-appellee, the Middletown City Employees Federal Credit Union ("the Credit Union),[1] in a declaratory judgment action. We affirm the decision of the trial court.
 {¶ 2} In December 2002, after seeing a listing on the internet auction site eBay for a 1980 model year Porsche 911, appellant contacted the seller directly, and without inspection, agreed to purchase the auto for $17,045. Appellant contacted the Credit Union and obtained financing for the purchase price of the vehicle. The seller mailed the auto's title and an odometer statement to the Credit Union. Upon receipt, the Credit Union mailed a check for the purchase price to the seller. When the vehicle was delivered, appellant discovered that it was not as represented by the seller, and worth substantially less than the agreed upon purchase price.
 {¶ 3} Appellant filed suit seeking a declaration of the amount, if any, that he owed the Credit Union due to the auto's defects. Both parties moved for summary judgment. The trial court granted judgment in favor of the Credit Union, concluding that it had no liability for the auto's defects under the loan contract. Appellant appeals, raising two related assignments of error, arguing (1) that the trial court erred in granting the Credit Union's motion for summary judgment, and (2) erred by denying his motion for summary judgment. Because the assignments of error are related, we will address them together.
 {¶ 4} Appellate review of a trial court's decision granting or denying summary judgment is conducted de novo; that is, an appellate court reviews the trial court's judgment independently and without deference to its determination. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 5} The resolution of this case hinges on the following language, contained in paragraph 14 of the loan contract:
 {¶ 6} "CONSUMERS' CLAIMS AND DEFENSES NOTICE — The following paragraphapplies only when the box on the reverse side is checked.
 {¶ 7} "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."
 {¶ 8} This language is required in certain consumer credit contracts by a trade regulation rule promulgated by the Federal Trade Commission. Section 433.2(a), Title 16, C.F.R. Commonly referred to as the "FTC holder rule," the regulation effectively banned the utilization of the holder-in-due-course doctrine in consumer credit cases. Hardeman v.Wheels, Inc. (1988), 56 Ohio App.3d 142, 144; See Section 433.2(a), Title 16, C.F.R. Ohio has codified this regulation at R.C. 1307.031. The FTC holder rule "shifts the risk of seller misconduct to creditors who could [better] absorb the costs of misconduct." Primus Auto FinancialServices v. Brown, Hamilton App. No. C-0405993, 2005-Ohio-5207, ¶ 7. Thus, the holder of a retail installment contract, assigned under the FTC holder rule, is subject to any claim or defense the debtor could assert against the seller, provided the claim or defense is one "arising out of" or "connected with" the original transaction. Id. (citations omitted).
 {¶ 9} As a threshold matter, we find that FTC holder rule language was not incorporated into the contract at issue in the present case. The loan documents, including the security agreement and truth in lending disclosure both contain statements that the claims and defenses language of the FTC holder rule is applicable only if the appropriate box has been checked; it has not been checked or marked in any way. Consequently, it is evident that the parties did not intend to integrate this language into the contract. We reject appellant's contention that the language is incorporated into the contract by its mere presence, in spite of unambiguous language indicating that it is incorporated only if affirmatively marked. A court may not interpret unambiguous contract terms in a manner inconsistent with those terms, as appellant would have us do. See Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241;Arvai v. Littrell Bros., Preble App. No. CA2001-07-013, 2002-Ohio-1018.
 {¶ 10} However, even if the FTC holder rule language is not incorporated into a contract, liability under the rule may still arise. See Associates Home Equity Services, Inc. v. Troup (N.J. App. 2001),343 N.J.Super 254, 276, 778 A.2d 529, 542. A financial institution may not "evade the remedial reach of the FTC holder rule simply by omitting the required notice." Id.
 {¶ 11} In the instant case, though, we further conclude that the Credit Union bears no derivative liability for its failure to incorporate this language into the contract, as the FTC holder rule was inapplicable to the transaction. By its very terms, the rule applies to "consumer credit contracts," which are defined as "[a]ny instrument which evidences or embodies a debt arising from a `Purchase Money Loan' transaction or a `financed sale' as defined in paragraphs (d) and (e) of this section." Section 433.1(i), Title 16, C.F.R.
 {¶ 12} A purchase money loan in turn is defined as "[a] cash advance which is received by a consumer * * * which is applied, in whole or substantial part, to a purchase of goods or services from a seller who (1) refers consumers to the creditor or (2) is affiliated with the creditor by common control, contract or business arrangement." Section 433.1(d), Title 16, C.F.R. The record reveals that the Credit Union was not the seller; the seller did not refer appellant to the Credit Union to obtain financing; and the seller and Credit Union were not affiliated by contract or business arrangement. We disagree with appellant's contention that by simply receiving the title and an odometer statement from the seller, and mailing a check to the seller, that the Credit Union and seller had a "business arrangement" under the FTC holder rule.
 {¶ 13} We likewise conclude that the loan was not a financed sale. A financed sale is defined as "extending credit to a consumer in connection with a `Credit Sale.' Within the meaning of the Truth in Lending Act and Regulation Z." Section 433.1(e), Title 16, C.F.R. Regulation Z defines a credit sale, in pertinent part, as one in which the "seller is a creditor." Section 226.2(a)(16), Title 12, C.F.R. Clearly, in the present matter, the Credit Union was not the seller, and as a result, the loan is not a financed sale as defined by the applicable regulations.
 {¶ 14} Because the FTC holder rule language was not incorporated into the contract, nor was it required by law to be included in the contract due to the nature of the transaction, the Credit Union is not derivatively liable to appellant for the vehicle's defects. See Pratt v.North Dixie Manufactured Housing, Ltd., Wood App. No. WD-02-054, 2003-Ohio-2363; Hanlin v. Ohio Builders and Remodelers, Inc. (S.D.Ohio 2001), 196 F.Supp. 572. Consequently, we hold that trial court did not err by granting judgment as a matter of law in favor of the Credit Union, and denying appellant's motion for summary judgment. The assignments of error are overruled.
 {¶ 15} Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] Defendants, Aziz Afzali and Steve Assil, are not parties to the present appeal. Appellant was unable to perfect service on Afzali, and the suit against Assil was dismissed for lack of personal jurisdiction.