[Cite as *Roth v. Glueck*, 2012-Ohio-4407.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN ROTH | : | APPEAL NO. C-110780 |
| | | TRIAL NO. A-1010310 |
| and | : | |
| MARITA ROTH, | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| JERRY GLUECK, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed from is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 28, 2012

*Christopher Ragonesi*, for Plaintiffs-Appellants,

*Ritter & Randolph, LLC*, and *Tracye T. Hill*, for Defendant-Appellee.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

{¶1} Plaintiffs-appellants Stephen and Marita Roth appeal from the trial court's grant of summary judgment for defendant-appellee Jerry Glueck in this second lawsuit between the neighbors. Glueck argued that the Roths' claims in the second lawsuit were either barred under the doctrine of res judicata or prohibited by a settlement agreement entered into by the parties. The trial court found that the claims were barred by res judicata. For the reasons that follow, we reverse the trial court's judgment and remand the cause for further proceedings.

## I. Background Facts

### A. The First Lawsuit: A-0911871

{¶2} In the spring of 2007, Glueck moved into a house previously owed by his parents that is located on property adjacent to and downhill from the Roths' property. A creek bed and underground drainage lines allowed water to flow from the Roths' property onto Glueck's property.

{¶3} While clearing out some brush on his property, Glueck discovered that the Roths' septic discharge pipe ("sewage treatment line") ran 20 feet onto his property. As a result, he sent the Roths a letter informing them that they could pay him $30,ooo for an easement to keep the sewage treatment line in place and unimpeded.

{¶4} In December 2009, the Roths filed a lawsuit, the case numbered A-0911871, alleging that Glueck had blocked or attempted to block the downhill drainage of water though his property by placing debris in the creek bed, that this blockage had caused damage to their driveway, and that he had further threatened to block the large sewage treatment line, which would cause them irreparable harm.

2

The Roths also presented an adverse-possession claim related to a portion of their driveway.

{¶5} Glueck answered and counterclaimed for trespass based on the encroachment of the Roths' sewage treatment line onto his property. He sought ejectment, and the declaration and the abatement of a nuisance. Later, he discovered some of the small drainage lines on his property that carried the flow of water from the Roths' property.

{¶6} Before trial, the parties settled. In April 2010, the trial court incorporated the parties' settlement agreement into an "Agreed Order of Dismissal" ("Agreed Order") that dismissed all claims and counterclaims with prejudice in the case numbered A-0911871.

{¶7} The Agreed Order directed the Roths to cut all offending drainage lines, including the sewage treatment line, so that the lines terminated on their property, at least one and one-half feet from Glueck's property, and to contribute up to $600 to replace a portion of Glueck's fence located at the excavation site. The Agreed Order set deadlines for both of these obligations.

{¶8} The Agreed Order directed Glueck to excavate upon his property to remove the offending drainage lines and prohibited him from blocking or impeding the flow of the drainage lines that were to be cut back to the Roths' property.

{¶9} The Agreed Order also declared the rights of the parties with respect to the driveway, and their rights of ingress and egress. The court specifically retained jurisdiction to enforce the Agreed Order in a contempt action.

## B. Contempt Motions

{¶10} In September 2010, Glueck moved the court to hold the Roths in contempt of the Agreed Order. Glueck alleged that the Roths had failed to cut back at least three drainage lines and to reimburse him for the cost of the fence repair.

{¶11}   The Roths filed a counter motion for contempt.  The memorandum in support provided: "Since the effective date of the Agreed Order, Defendant has maliciously harassed Plaintiffs, and has willfully caused severe damage to their property.  While some of Defendant's misconduct gives rise to new causes of action, much of it is in direct contravention of the Court's April 12, 2010 Order."

{¶12}   The Roths attached Stephen Roth's affidavit to the contempt motion. He identified Glueck's "contemptuous misconduct" as blocking or impeding the flow of water from the newly cut lines, excavating on the Roths' property and causing significant damage, and billing the Roths for fence repairs unrelated to damage caused by the excavation.

{¶13}   At a November 10, 2010 evidentiary hearing on the competing motions, Glueck's attorney argued that the contempt proceedings involved only the issue of whether either party had failed to perform an obligation imposed by the Agreed Order and that evidence not addressing this issue was irrelevant. In response, the Roths' expressly limited their argument for contempt to Glueck's alleged blocking of the flow of water that came onto his property from the Roths' property.

{¶14}   After Glueck presented his evidence in support of his motion for contempt, the parties again reached a settlement.  This December 2010 agreement ("Settlement Agreement") required the Roths to pay Glueck $600 for fencing and to cut the remaining drainage lines found on Glueck's property that Glueck had identified during the excavation.  The parties also agreed to withdraw their motions for contempt.

### C. The Second Lawsuit: A-1010310

{¶15}   On the same day as the contempt hearing in the case numbered A-0911871, the Roths filed the second lawsuit against Glueck, in the case numbered A-1010310. They included claims for "injury to property," "intentional tort,"

4

"negligence," "trespass," "injury/damage to tree," "theft," "violation of zoning resolution," "breach of public policy," "intentional/negligent infliction of emotional distress," and "punitive damages."

{¶16} The Roths' claims in the second lawsuit are based on the following allegations: (1) Glueck, when excavating the drainage lines on his property, either intentionally or negligently excavated over the property boundary and onto their property, removing their lateral support and damaging the roots of an old tree; (2) Glueck engaged in various tortious and harassing conduct, such as removing survey stakes from their property, which began in June 2010; and (3) Glueck erected replacement fencing at the excavation site that did not comply with the local zoning regulations.

{¶17} The Roths' complaint survived Glueck's motion to dismiss for failure to state a claim, with the exception of the intentional- or negligent-infliction-of-emotional-distress claim. The court also sua sponte ordered the Roths to file a more definite statement with respect to Count II, the intentional-tort claim.[1]

{¶18} Glueck then moved for summary judgment, arguing that the doctrine of res judicata barred the litigation of the claims. Alternatively, Glueck argued that the claims were barred by the terms of the parties' Settlement Agreement.

{¶19} The trial court granted summary judgment to Glueck on all the remaining claims. In its decision, the court stated that the Roths' claims in the second lawsuit "arise out of the same transaction or occurrence which was the subject matter of the Agreed Order and subsequent proceedings in the prior action."

---

[1] The record contains Glueck's answer to the amended count two but not the Roths' amended pleading.

## II. Analysis

{¶20}   In a single assignment of error, the Roths argue that the trial court erred by granting summary judgment based on the doctrine of res judicata.   We review the grant of summary judgment de novo, applying the standards set forth in Civ.R. 56(C).

## A. Res Judicata

{¶21}   Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.   In other words, the doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, as the doctrine renders an existing final judgment between the parties conclusive to all claims that were or could have been litigated in the first action. *Id.* at 382.

{¶22}   The Roths argue that the claims in the second lawsuit were never the subject of a valid, final judgment on the merits and, therefore, they are not barred under the doctrine of res judicata. They do not dispute, however, that the Agreed Order and the Settlement Agreement constitute a valid, final judgment between the parties that resolved the claims and counterclaims alleged in the first lawsuit. Therefore, the issue is limited to whether the second lawsuit involves claims arising out of the same transaction or occurrence as the first lawsuit.

{¶23}   In his motion for summary judgment, Glueck argued that the Roths' claims in the second lawsuit arise out of the same transaction or occurrence as the claims in the first lawsuit because these claims involve the same "subject matter" of the Agreed Order and the Settlement Agreement—the excavation and removal of the drainage lines.   He argued also that the contempt proceedings were a part of the

original action, that the Roths raised the new claims in their contempt motions, and that the Roths either had the opportunity to fully litigate those new claims before voluntarily removing them from the litigation process or that the claims were effectively litigated when the Roths entered into an agreement that resolved the competing contempt motions.

{¶24}   The Roths argue that the new claims are based upon different facts, many of which did not exist until months after the prior action had been settled and dismissed as memorialized in the Agreed Order.   Therefore, they contend that the new claims do not "arise out of the same transaction or occurrence" that was the subject matter of the Agreed Order and the contempt proceedings

{¶25}   They also challenge Glueck's contention that the new claims were or could have been resolved in the contempt proceedings for two reasons: (1) they limited their contempt motion to Glueck's alleged blockage of water flow in contravention of the Agreed Order, and (2) the trial court in the contempt proceedings lacked jurisdiction over the new claims, which did not actually involve contemptuous conduct.  We address each of these arguments in turn.

## 1.  No Common Nucleus of Operative Facts
## After a Change in Circumstances

{¶26}   In applying the doctrine of res judicata, the Ohio Supreme Court has clarified that the phrase "arising out of the same transaction or occurrence that was the subject matter of the previous action" means that the claims have a "common nucleus of operative facts."  *Grava*, 73 Ohio St.3d at 382-383, 653 N.E.2d 226.  A "common nucleus of operative facts" does not exist where there has been a change in circumstances.  *See State v. Schwartz*, 1st Dist. No. C-040390, 2005-Ohio-3171, ¶ 9, citing *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St.3d 260, 510 N.E.2d 373 (1987); *see also Grava* at 383.

{¶27} Glueck argued that res judicata applied because both actions involve the same general "subject matter"–the excavation and removal of the drainage lines. But he did not use the term "subject matter" in the context that the Supreme Court used it. *See Grava* at syllabus. As demonstrated by the Roths, the claims in the second lawsuit could not have been brought as claims in the first lawsuit because the conduct at issue had not even occurred before the Agreed Order was entered. The claims brought in the second lawsuit did not arise out of the same transaction or occurrence as the claims brought in the first lawsuit because they did not have a common nucleus of operative facts.

## 2. Scope of Jurisdiction in Contempt Proceedings

{¶28} The question remains as to whether the new claims were brought or could have been brought in the contempt proceedings. Contempt involves the violation of a court order. In the case numbered A-0911871, the court reserved jurisdiction only to enforce the terms of the Agreed Order.

{¶29} Significantly, Glueck's argument is not that the claims alleged in the second lawsuit also comprised violations of the Agreed Order, but instead that the Roths had characterized them that way. And after reviewing the alleged conduct, we conclude that this conduct is not a violation of the Agreed Order, even though it occurred in part while Glueck was purportedly fulfilling his obligation under the Settlement Agreement to remove the drainage lines on his property. Thus, the trial court in the case numbered A-0911871 did not have jurisdiction to resolve these new claims, which involved issues beyond the scope of the court's contempt powers.

{¶30} Because the trial court lacked jurisdiction to resolve the new claims in the contempt proceedings, we are unable to conclude that the Roths had a full and fair opportunity to litigate these new claims in the contempt proceedings.

{¶31} Glueck also contends that the Roths waived any jurisdictional defects by injecting the new claims into the contempt proceedings and agreeing to be bound by the terms of the Settlement Agreement. Further, he argues that the Roths are estopped from claiming that the trial court lacked jurisdiction because they previously characterized the allegedly tortious conduct as acts that directly contravened the Agreed Order.

{¶32} Glueck's arguments, however, are not supported by the law. Parties cannot confer subject-matter jurisdiction on the trial court by consent. *See, e.g., Gates v. Mills Inv. Co. v. Parks*, 25 Ohio St.2d 16, 19-20, 266 N.E.2d 552 (1971); *Yantek v. Coach Builders Ltd.*, 1st Dist. No. C-060601, 2007-Ohio-5126, ¶ 18. And a court may not acquire subject-matter jurisdiction based on a theory of estoppel or waiver arising from the acts of the parties. *Gates*; *Gaston v. Bd. of Review*, 17 Ohio App.3d 12, 14, 477 N.E.2d 460 (8th Dist.1983). Estoppel or waiver would not apply here in any event where the Roths expressly limited the scope of their contempt motion before the hearing on contempt.

{¶33} Ultimately, because the claims in the second lawsuit do not involve the same nucleus of operative facts at issue in the prior action, and Glueck's waiver and estoppel arguments are not supported by the law, we hold that the Roths' claims in the second lawsuit are not barred under the doctrine of res judicata. Accordingly, we sustain the Roths' assignment of error.

## B. Settlement Agreement

{¶34} Glueck also moved for summary judgment on the ground that the Roths had agreed to withdraw their contempt motion that included the new claims as a condition of settlement, and, therefore, they were barred from raising these same allegations in the second lawsuit. Glueck raises this issue again on appeal, although he presents it as part of his res judicata argument.

{¶35} Whether the Roths' claims are barred by the terms of the Settlement Agreement is an issue that differs from whether res judicata barred the claims because the trial court's jurisdiction on the contempt issue was limited by the scope of the Agreed Order. A settlement agreement is a contract designed "to terminate a claim by preventing or ending litigation." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). In construing the terms of a written contract, our first objective is to give effect to the intent of the parties, which we presume rests in the language that they have used. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29. The court must construe the agreement "to give effect to every provision in the agreement," where possible. *Id.*

{¶36} When interpreting a written contract, we give common words their plain and ordinary meaning, unless an absurdity results or some other meaning is apparent from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶37} In support of his argument that the Roths' claims in the second lawsuit are barred by the terms of the Settlement Agreement, Glueck relied on the provision in the recital that reads as follows: "the parties desire to settle the disputes pursuant to the terms and conditions set forth herein below, all matters raised by the parties in their cross-motions." But a second provision reads: "[n]otwithstanding any provision to the contrary, this Agreement is not intended, nor shall it be construed in any way, to apply to, bar or limit the claims asserted by either party in Hamilton County Court of Common Pleas, case number A-1010310."

{¶38} The second provision limits the first provision, as demonstrated by the use of the language "notwithstanding any provision to the contrary." Thus, the

parties did not agree to bar or limit the claims asserted by the Roths in the second lawsuit.

{¶39} Because the parties did not agree to bar or limit the Roths' claims in the second lawsuit, Glueck was not entitled to summary judgment on that basis.

### III. Conclusion

{¶40} Res judicata bars only those claims arising out of the same transaction or occurrence that was the subject matter of a previous action. Where the claims in the first and second lawsuit do not share a "common nucleus of operative facts" because of a change in circumstances, res judicata does not apply. Nor does res judicata apply to bar claims based on allegations that the Roths first raised in their contempt motion, where those allegations exceeded the scope of the trial court's limited jurisdiction in the contempt proceeding and the Roths later withdrew them. Finally, the Roths were not contractually barred from bringing the claims in the second lawsuit based on the agreement that settled the competing motions for contempt, even though the Roths had previously characterized some of the conduct sued upon as contemptuous, where the terms of the Settlement Agreement clearly allowed the Roths to pursue the claims.

{¶41} As a result, the trial court erred by granting summary judgment to Glueck. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings.

Judgment reversed and cause remanded.

**HILDEBRANDT, P.J., CUNNINGHAM** and **DINKELACKER, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.