[Cite as *Roberts v. Jones Lang LaSalle Ams., Inc.*, 2018-Ohio-1039.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CRAIG ROBERTS, | : | APPEAL NO. C-160893 |
| | | TRIAL NO. A-1505058 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| JONES LANG LASALLE AMERICAS, INC., | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 21, 2018

*Rebold Larkin Murray, L.L.C.*, *Kyle D. Murray* and *Andrew J. Ferguson*, for Plaintiff-Appellant,

*Thompson Hine, L.L.P.*, *Robert P. Johnson* and *Ellen M. Maniaci*, for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1}     Plaintiff-appellant Craig Roberts appeals the trial court's judgment in favor of defendant-appellee Jones Lang LaSalle Americas, Inc., ("JLL") on Roberts's breach-of-contract claim.  We affirm the judgment of the trial court because Roberts is not entitled to receive commissions that JLL never collected.

### Background

{¶2}     In September of 1996, Roberts was a real-estate broker for CB Commercial Real Estate Group, Inc., ("CB Commercial").  At that time, he entered into an exclusive agency agreement with tenant Andersen Consulting Solutions Center, LLP, ("Andersen") which provided that Roberts would locate office space for Andersen to lease.  This agreement began on September 19, 1996, and continued on a month-to-month basis until a lease agreement was executed or closed. Shortly thereafter, Roberts left CB Commercial and joined JLL, taking the Andersen contract with him.  JLL and CB agreed that they would split the Andersen commission, and Roberts and JLL agreed that they would split the net commissions that JLL received.

{¶3}     Roberts located office space for Andersen in the Atrium One building, and in anticipation of the lease closing, JLL and Atrium One entered into a commission agreement, effective from July 18, 1997, to December 31, 1997.  The commission agreement provided that JLL, as exclusive agent for Andersen, would be paid a commission if the lease were renewed.

{¶4}     Roberts' employment with JLL ended before the Andersen lease closed.  Roberts and JLL entered into a severance agreement ("the agreement").  The agreement provided that JLL would pay Roberts his commission on transactions that closed after his employment ended, provided that Roberts had "actively developed and consummated the transaction * * *."  The agreement defined the term "closed"

2

as "(1) tenant and landlord have entered into a binding leasing contract * * *; and (ii) the invoice for the Commission * * * has been sent out by Company."

{¶5} This clause was followed by four additional clauses. The portion in bold is a handwritten addition, initialed by Roberts and a representative from JLL. The struck-through portion was struck through by hand and initialed by Roberts and a representative from JLL.

> No * * * commissions are due or payable * * * if the Commission has not been received by [JLL], regardless of any other prior agreements or practices.
>
> [Roberts] agrees that [JLL] may waive, reduce, adjust, compromise, or settle with third parties any commission in which [Roberts] is or claims to be entitled to share, **with the exception of commissions due to [Roberts] per the terms of the Agreement between [JLL] and CB Commercial Real Estate, a copy of which is attached hereto as part of Attachment One.**
>
> In addition, [JLL] shall have the exclusive right to determine what steps or procedures, if any, should be undertaken to collect or enforce any claim for commission, or share thereof, against third parties, the expense for which shall be charged, pro rata, against commission due [Roberts].
>
> [JLL]'s decision shall be reasonable as to any such matters, but in any event shall be final and binding, ~~incurring no liability to [Roberts] for its decision to waive, reduce, adjust, compromise or settle a claim or failure to collect such commission(s).~~

{¶6} The Andersen lease closed on August 7, 1997, and was for space on the

15th and 16th floors of Atrium One for a term of ten years. The lease included a First Renewal Option to extend the lease from January 1, 2008, to December 31, 2012, and a Second Renewal Option for an additional five years beginning January 1, 2013. To qualify as a renewal, the lease had to be upon the same terms and conditions as the initial lease, with the exception of the rent. JLL paid Roberts his commission from the Anderson lease.

{¶7} On January 31, 1998, the Anderson lease was amended to name Property Ohio OBJLW as the Landlord because it had purchased the building from Atrium One. The term of the lease was also amended to reflect a termination date of December 31, 2007. The amendment included a broker's clause which stated that the landlord would pay JLL a commission if the tenant subsequently renewed or leased additional space, "all to be provided in a separate written agreement between Landlord and JLL." JLL never entered into a separate written agreement with the Landlord.

{¶8} In September 2007, the lease was changed to reflect that Accenture, formerly Andersen, was the Tenant, and Asset Ohio Fourth Street LLC had succeeded to the property as Landlord. This lease was effective from January 1, 2008, to December 31, 2012. Under the terms of the new lease, Accenture was vacating the 15th floor premises and substantially modifying the space on the 16th floor. The lease further specified that "Landlord and Tenant agree that there are no claims for broker's commissions or finder's fees, other than Studley, Inc. (the "Broker") in connection with the execution of this Amendment."

{¶9} In December 2012, the lease was changed again. The terms of the new lease were modified effective January 1, 2013, to December 31, 2017. Accenture reduced the premises from 32,246 square feet to 19,092 square feet, and Landlord

was required to make various changes to the space. The parties again agreed that Studley, Inc., and Cassidy Turley, (collectively "the Brokers") had the sole claim for commissions in connection with the execution of the lease.

{¶10} In 2015, Roberts filed a breach-of-contract action against JLL, claiming that the 2007 and 2012 leases were renewals as contemplated in the severance agreement, and that JLL breached the agreement by not paying him commissions on the renewals. Both parties moved for summary judgment. The trial court denied the motions, and held a bench trial on September 30, 2016.

{¶11} The evidence at trial established that Accenture renewed the lease in 2007 and 2012, neither Roberts nor JLL did any work on these renewals, Studley, Inc., and Cassie Turley were the brokers who had the sole claim for commissions, JLL was not paid any commissions for the renewals, JLL never sought or received any commissions, and JLL never paid Roberts any commissions on the leases.

{¶12} Following the bench trial, the trial court determined that, under the terms of the contract, JLL had the sole discretion to determine whether to collect commissions. If no commission is collected, Roberts is not entitled to a commission. The trial court concluded that JLL did not breach the Severance Agreement and entered judgment for JLL. Roberts timely appealed.

### Assignment of Error

{¶13} In his sole assignment of error, Roberts argues that the court erred in concluding that JLL had the sole discretion to collect the commissions and did not owe any commission to Roberts if it did not collect. Specifically, Roberts argues that JLL is required to pay Roberts his commission, whether it collected the commission or not, because the contract prohibits JLL from waiving, reducing, compromising, or settling the Accenture commissions.

### Contract Interpretation

{¶14} Contract interpretation is a matter of law, which courts review de novo. *St. Marys v. Auglaize Cty. Bd. Of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 5, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). The court's primary objective is to determine the intent of the parties based upon the language they chose to employ. *Wal-Mart Realty Co. v. Tri-County Commons Assoc., LLC*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 10.

{¶15} Common words will be given their ordinary meaning unless the entirety of the contract reveals a contrary intent. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). If the terms of the contract are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

### Roberts was not Entitled to a Commission under the Agreement

{¶16} Under the plain language of the severance agreement, Roberts was entitled to a post-termination commission if a transaction closed, and he had actively developed and consummated the transaction. A transaction did not close until JLL sent an invoice for the commission. The agreement also provided no commission would be payable to Roberts if JLL did not receive it. Although JLL was prohibited from waiving, reducing, adjusting, compromising, or settling any Accenture commissions, it had the "exclusive right to determine what steps or procedures, if any, should be undertaken to collect or enforce any claim for commission."

{¶17} According to the severance agreement, the 2007 and 2012 lease

transactions never closed because JLL did not send Accenture an invoice for a commission. Significantly, Roberts did not develop or consummate the transactions. Moreover, as the trial court correctly concluded, JLL had the sole discretion to determine whether to collect a commission. If no commission is collected, Roberts is not entitled to a commission.

{¶18} Roberts argues that JLL is required to pay Roberts the commission, whether it collected the commission or not, because the contract prohibits JLL from waiving, reducing, compromising, or settling the Accenture commissions. We disagree.

{¶19} Here, the record is clear that neither Roberts or JLL actively developed or consummated the 2007 or 2012 lease agreements, and that the sole brokers entitled to the commissions were Equity, Inc., and Cassie Turley. JLL never entered into a separate written agreement regarding the renewals as specified in the 1998 amendment to the lease. Because JLL had no agreement to negotiate the 2007 and 2012 leases, and did not negotiate the leases, it had no right to the commissions, and therefore, could not waive, reduce, compromise, or settle the commissions.

## Conclusion

{¶20} Accordingly, Roberts's assignment of error is overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

**MILLER** and **DETERS, JJ.,** concur.

Please note:

This court has recorded its own entry this date.