NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0007n.06

No. 23-3680

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| LONG POINT ENERGY, LLC, | ) |
|     Plaintiff / Counter-Defendant – Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| GULFPORT ENERGY CORPORATION, et al., | ) COURT FOR THE SOUTHERN |
|     Defendants / Counter-Claimants – Appellees, | ) DISTRICT OF OHIO |
| | ) |
| MICHAEL A. PERKINS; et al., | ) OPINION |
|     Defendants / Cross-Claimants / Counter-Claimants – Appellees. | ) |
| | ) |

Before:  McKEAGUE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge.  Long Point Energy, LLC, claims that it holds oil-and-gas rights for two tracts of land that were otherwise conveyed in a single warranty deed in 1948.  The district court granted summary judgment to the defendants.  We reverse.

In 1947, Bertha Freudiger acquired three parcels of land totaling 363 acres in Belmont County, Ohio.  At issue in this appeal is the first of those parcels, which comprised 245 acres divided into two tracts of 165 and 80 acres, respectively.  The 1947 deed for that first parcel excepted two coal seams (meaning they were not conveyed to Freudiger):  namely a "Pittsburg vein of coal" for the 165-acre (first) tract, and a "six foot seam of coal" for the 80-acre (second) tract.  Meanwhile, the second and third parcels in the 1947 conveyance, for their part, totaled 118 acres.

In September 1948, Freudiger granted to Belmont Electric Cooperative a "Right-of-Way Easement" for all 363 acres of the property conveyed to her the year before. The following month, Freudiger executed the warranty deed at issue here. That deed conveyed the first parcel—again divided into tracts of 165 and 80 acres—to Glenn and Ruth Perkins. In a single sentence, however, the deed excepted both "a right of way to Belmont Electric Cooperative Inc. for an electric power line" and "all of the oil and gas and the right of leasing the same, together with customary surface privileges." In a separate deed, Freudiger conveyed the second and third parcels (totaling 118 acres) to Webster Perkins, again with a reservation of oil and gas rights.

Thereafter the "Perkins Defendants" in this litigation (as the parties refer to them here) came to own the all the interests that Bertha Freudiger conveyed in 1948 to Glenn and Ruth Perkins and to Webster Perkins, respectively. In 2013, the Perkins Defendants leased the oil and gas rights for all three parcels to Rice Drilling D, LLC; a few years later, Rice assigned about 52% of its interest in those leases to Gulfport Energy Corporation and Gulfport Appalachia LLC (collectively, "Gulfport").

Rice and Gulfport each obtained title opinions stating that—by way of the oil-and-gas exceptions in the 1948 deeds—the oil and gas rights to these three parcels might have been severed from the interests conveyed (to Glenn and Ruth Perkins and to Webster Perkins, respectively) in the 1948 deeds. By 2016, however, Rice and Gulfport were drilling for oil on these parcels.

That same year, Long Point contacted the heirs to Bertha Freudiger, who later conveyed (by quitclaim deeds) to Long Point their oil-and-gas rights in these parcels. Long Point thereafter brought this suit in federal court against Rice, Gulfport, and the Perkins Defendants, asserting claims for trespass under Ohio law and seeking to quiet title. The district court eventually granted summary judgment to the defendants as to the 165-acre first tract of the first parcel, holding that

the exception of oil and gas rights in the 1948 deed for that parcel applied only to the second tract. The district court also dismissed, on jurisdictional grounds, Long Point's claims as to the 80-acre second tract of the first parcel and as to the 118-acre second and third parcels (conveyed, as described above, by a separate deed in 1948).

Long Point then brought this appeal, challenging only the district court's grant of summary judgment as to the 165-acre tract. We review that decision de novo. *Miles v. S. Cent. Human Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020).

The parties agree that Ohio law applies here. In Ohio, the "construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978). Ohio courts interpret such instruments according to their "plain and ordinary meaning." *Porterfield v. Bruner Land Co.*, 103 N.E.3d 152, 156 (Ohio Ct. App. 2017). Moreover, as Long Point aptly observes, deeds have a progressive character: to understand the meaning of certain words or phrases used therein—like the "Pittsburg vein of coal" and the "six foot seam of coal," as used in the 1948 deed—one must look at the instruments that came before. Thus, when an instrument incorporates by reference the terms of a preceding instrument, "the instruments must be read and construed together." *Id.* at 160.

Here, the 1948 deed for the first parcel—comprising two tracts of 165 and 80 acres, conveyed to Glenn and Ruth Perkins—provides, in its entirety, as follows:

> First Tract:
>     Being a part of Section Twenty-five (25) Township Five (5) Range Four (4) and beginning for the same at a stone marked A at the Northeast corner of said Section 25; thence West with North line of said Section 25, 10 rods to a stone in run; thence up said run, following the road making the middle of the road, the line, south 61.1/2° West 18.16 rods; thence South 68° West 11.28 rods to a small drain; thence North 74° West 23.80 rods; thence South 88° West 16 rods; thence North 49.1/2° West 9.88 rods to a stone in the North Section line, thence West 72.8 feet with North Section line to a stone at a wild cherry tree, thence South with Elizabeth Riley line about 160 rods to a stone; thence East 4 rods and 4 feet to a run; thence

South about 160 rods to the south line of said Section 25; thence East 80 rods with the South line of said Section 25 to the South-east corner of said Section 25; thence North about 320 rods with eastern line of said Section 25 to the place of beginning, **containing 165 acres more or less.**

**Excepting from all of the above tract of land the No. 8 or Pittsburg vein of coal** which has heretofore been conveyed by deed by Mathias and Ivey Noffsinger to Peter H. Hitchcock and Wm. D. Reese, together with mining rights and privileges conveyed by said deed of conveyance.

Second Tract:
Being the West half of the South-west quarter of Section Nineteen (19) Township Five (5) Range Four (4) in the district of lands subject to sale at Marietta, Ohio, **containing 80 acres more or less**.

**Excepting the six foot seam of coal** together with mining rights and privileges conveyed by the coal deed.

**Excepting a right of way to Belmont Electric Cooperative Inc. for an electric power line and excepting a right of way to the Citizens Telephone Company for a telephone line and excepting all of the oil and gas and the right of leasing the same, together with customary surface privileges**.

**The property hereby conveyed being the same as that described as the first parcel**, although the school lot was therein excepted in deed of Vernon E. Freudiger, Executor of the Will of Martha J. Dermott, deceased, dated October 31, 1947, recorded in Volume 373, page 127 of the Record of Deeds of Belmont County. The school lot excepted in said Executors Deed was by lease recorded in Volume 7, page 456, which has expired and it is therefore not excepted from this conveyance.

(Emphasis added.)

The question in this appeal is whether the exception of oil and gas rights in the bolded, penultimate paragraph applied only to the 80-acre second tract—as the district court held—or to the parcel as a whole, as Long Point argues here. The district court's reasoning was straightforward, if brief: in the court's view, the only exception applicable to the first tract was the one that immediately followed the description of that tract—namely the exception for the "Pittsburg vein of coal." And the exceptions that followed the description of the second tract—as a matter of "structure," the district court thought—likewise applied only to that tract.

That reasoning was mistaken. As an initial matter, the "school lot excepted" in the very last paragraph of the 1948 deed undisputedly was located (per the "Executor's Deed" referenced in that paragraph) in the *first* tract of the parcel conveyed in the 1948 deed—not the second. PageID 2613. That fact alone negates any inference that the exceptions in the deed's last two paragraphs applied only to the second tract, rather than to the parcel as a whole.

Moreover, the deed's exception of oil-and-gas rights comes in the *very same sentence* as its exception of "a right of way to Belmont Electric Cooperative Inc." The latter exception plainly refers to a prior instrument granting a particular right-of-way to Belmont. Thus—to understand what that exception meant—the 1948 deed and the Belmont easement must "be read and construed together." *Porterfield*, 103 N.E.3d at 160. Doing so does not amount to consideration of "extrinsic evidence"; instead, to the extent that one instrument (here the 1948 deed) incorporates another (the instrument granting the right-of-way) by reference, the latter document "becomes part of the" former. *Id.*

The September 1948 easement for Belmont Electric expressly applied to all "363" acres of the three parcels that Freudiger conveyed to the Perkinses the following month. The 1948 deed's exception for the Belmont right-of-way, therefore, indisputably applied to the whole parcel conveyed by that deed, not just to the second tract. The same was therefore true of the exception—in the same sentence—of oil-and-gas rights, unless that exception by its terms applied to less than the whole parcel. But the 1948 deed lacks any language confining the oil-and-gas exception to the second tract. To the contrary, that exception comprised "all of the oil and gas and the right of leasing the same, together with customary surface privileges." We therefore hold that the 1948 deed for the first parcel excepted the oil and gas underlying both the 165-acre tract and the 80-acre tract.

Separately, the defendants offer various alternative grounds for affirming the district court's grant of summary judgment as to the 165-acre tract. But the district court has not considered any of those grounds; and so, in this appeal, neither do we. *See Fox v. Washington*, 949 F.3d 270, 282-83 (6th Cir. 2020).

\*     \*     \*

We reverse the district court's grant of summary judgment as to Long Point's claims and counterclaims regarding the 165-acre tract of the first parcel; and we remand the case for further proceedings consistent with this opinion.