[Cite as *Jariwala v. Patel*, 2023-Ohio-950.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| YOGESH JARIWALA, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| HEMALI PATEL, *et al.*, | : | | Case No. 22CA0000010 |
| | : | | |
| Defendants - Appellants | : | | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Guernsey County
Court of Common Pleas, Case No.
19CV000573

JUDGMENT: Affirmed in part, Reversed in part

DATE OF JUDGMENT: March 22, 2023

APPEARANCES:

For Plaintiff-Appellee

SANJAY K. BHATT
Bhatt Law Offices, LTD.
2935 Kenny Road #225
Columbus, Ohio 43221

For Defendants-Appellants

RONALD P. FRIEDBERG
R. SCOTT HEASLEY
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122

*Baldwin, J.*

{¶1} Hemali Patel appeals the decision of the Guernsey County Court of Common Pleas granting summary judgment to appellee, Yogesh Jariwala. Patel also claims the trial court erred by failing to award her all of the damages she was entitled to receive.

## STATEMENT OF THE FACTS AND THE CASE

{¶2} Patel and Jariwala were members of a limited liability company, Hari Om Sai, LLC, the owner of a Baymont Inn and Suites. During a downturn in business, Jariwala called a meeting of the members to consider a request for additional capital from the members. The only member in attendance, Jariwala, approved the resolution and the Company issued a call for a capital contribution from the members with the proper notice. Patel did not comply with the request and Jariwala took steps that led to Patel's interest in the Company being forfeited, leading to litigation and this appeal.

{¶3} Jariwala and Patel completed an Operating Agreement for Hari Om Sai, LLC on July 18, 2012 and later amended the agreement so that Jariwala had a sixty percent interest and Patel held a forty percent interest. The Company owned a Baymont Inn and Suites and employed Patel as the General Manager of the Hotel for an annual salary of $30,000.00.

{¶4} The Company was successful in the early years, but suffered setbacks and less profitable times up until 2017. On September 6, 2017, Hari Om Sai sent a notice of a special meeting, scheduled for September 11, 2017, to consider a demand for additional capital contributions in the amount of $205,164.00. The demand for the capital

contribution was approved at the meeting, which Patel did not attend, and a capital call was issued obligating Patel to contribute $82,065.60.

{¶5}    Patel did not make the contribution and the Company sent a second letter, on September 25, 2017, warning that Jariwala had advanced funds to the Company on her behalf, that payment to Jariwala in the amount of $86,168.88 was due on or before October 25, 2017 and that failure to make the payment will result in the forfeiture of her membership interest. On October 20, 2017, Patel's counsel contacted Jariwala's counsel, objecting to the capital contribution demand upon Patel and the threatened forfeiture of her interest in Hari Om Sai. (Trial Transcript, p. 315, line 20 to p. 317, line 7 Trial Ex. L.). Patel did not make the requested payment. On July 18, 2022, Hari Om Sai, LLC delivered a notice to Patel confirming that her interest in the Company was forfeited.

{¶6}    The notice of forfeiture did not resolve the dispute between the parties, so Jariwala filed a complaint on September 27, 2019 seeking damages for unjust enrichment of Patel and declaratory judgment ordering forfeiture of Patel's interest in Hari Om Sai, LLC. Patel answered and filed a counterclaim as well as a cross-claim against Hari Om Sai alleging breach of the Operating Agreement, breach of employment agreement, unjust enrichment, breach of fiduciary duty and a demand for an accounting of the assets of the Company as well as a judicial dissolution. The parties waived their right to a jury trial and presented their case to the trial court.

{¶7}    The trial court issued a lengthy entry analyzing the evidence and the applicable law then issued judgment regarding the various claims, counterclaims and cross claims. The trial court granted Jariwala's request for declaratory judgment and ordered that the "the capital account of Defendant Hemali Patel forfeited to the

corporation Hari Om Sai, LLC in this matter." (Decision, Mar. 29, 2022, p. 11, ¶ 2). The trial court awarded Patel a judgment against third-party defendant, Hari Om Sai, LLC, in the amount of $27,500.00 for breach of an employment agreement and $55,588.00 for unjust enrichment. The remaining claims of all parties were either dismissed for lack of evidence or withdrawn.

**{¶8}** Patel filed a timely appeal and submitted

**{¶9}** "I. THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT HEMALI PATEL THE NET AMOUNT OF HER 2015 SALARY WHILE SERVING AS GENERAL MANAGER OF THE BAYMONT INN AND SUITES OWNED BY APPELLEE HARI OM SAI, LLC."

**{¶10}** "II. THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT HEMALI PATEL HER UNREIMBURSED PERSONAL PAYMENT OF APPELLEE HARI OM SAI, LLC'S AEP ENERGY BILL IN MARCH, 2017."

**{¶11}** "III. THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT HEMALI PATEL HAD FORFEITED HER MEMBERSHIP INTEREST IN APPELLEE HARI OM SAI, LLC."

**ANALYSIS**

I.

**{¶12}** In her first assignment of error, Patel contends that the trial court erred by failing to award her the net amount of her 2015 salary while serving as General Manager of the Baymont Inn and Suites.

**{¶13}** In her first and second assignment of error, Patel is arguing that the trial court's decision in not supported by sufficient evidence. Sufficiency of the evidence is a test of adequacy to determine if the evidence is legally sufficient to sustain a decision. This is a question of law to be reviewed de novo by this Court. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541(1997) as quoted in *Yoli v. Rowell,* 5th Dist. Fairfield No. 2021 CA 00040, 2022-Ohio-4193, ¶ 19.

**{¶14}** Patel was employed by Hari Om Sai as General Manager of the Baymont Inn and Suites beginning in 2012 and though her termination date was disputed, Jariwala did not dispute that she was employed in 2015. Patel conceded that she received a W-2 form from Hari Om Sai in 2015, that it reflected a salary of $78,000.00 and that she reported the 2015 income to the IRS.

**{¶15}** The trial court awarded Patel unpaid salary for 2016 in the amount of $7,500.00, and $20,000.00 for eight months of 2017, but specifically stated that she was not entitled to her alleged unpaid salary for 2015. (Decision, Mar. 29, 2022, p. 11, ¶ 12). Patel claimed that she did not receive a salary in 2015 and offered as proof company records she described as reflecting three checks in the amount of $10,500.00 written to her but never cashed. (Trial Transcript, p. 302, lines 1-22).

**{¶16}** While Patel never directly explained why the checks were not cashed, the record does contain her description of that sum of money as "sweat equity" suggesting that she made the decision to forgo her salary for 2015 in exchange for equity in the Company.

**{¶17}** Patel made her first reference to sweat equity while discussing her capital contributions:

Q.      Other than those two events, did you ever make a capital contribution

to Hari Om Sai?

A.      No. I just put the sweat equity.

Trial Transcript, p. 284, lines 23-24.

**{¶18}** Patel then describes the difficulty that the Company encountered in 2015 and that Jariwala obtained a loan for the Company from a third party, but listed only himself as obligated to repay the loan. Patel then describes $31,500.00 the same amount she is demanding as salary, as sweat equity:

Then I did not cash the check for – for almost $31,500 in 2015.

Q. Okay. We'll get to that. We'll -- we'll get to that.

A. And that's how I put it as a sweat equity to the 2015.

Trial Transcript, p. 286, lines 1-6.

**{¶19}** Finally, she designates the $31,500.00 she did not receive in 2015 as her sweat equity investment:

A. So I -- I have not received $31,500 in 2015. I have put -- used this money

as my sweat equity for Hari Om Sai, LLC, because --

Q. Okay.

A-- I was not able to find any cash to bring to the table to Hari Om Sai.

Trial Transcript, p. 301, lines 4-9.

**{¶20}** The trial court had sufficient evidence before it to conclude that Patel did not cash the checks that were issued because she had decided to reinvest that money into Hari Om Sai when she had no cash to offer and the business was suffering. Patel has offered no alternative explanation for her decision to forgo payment of $31,500.00 and then report to the IRS that she had received that sum as salary.

**{¶21}** We find that the record contains sufficient evidence to support the trial court's decision that Patel was not entitled to payment of $31,500.00 for salary for 2015.

**{¶22}** The first assignment of error is denied.

**II.**

**{¶23}** In her second assignment of error, Patel claims the court erred when it failed to award her $4,000.00 as reimbursement for her payment of a portion of the companies 2017 electric bill. The total amount of the bill was approximately $12,000.00 and Patel claims to have paid at least $4,000.00. (Trial Transcript, p. 313, line 10 to page 314, line 13). Jariwala confirmed that Patel paid a sum of money in March 2017 to restore electrical service to the hotel, but he did not testify to the amount.

**{¶24}** Patel supplied the court with a list of expenses she claimed were paid from her personal funds on behalf of Hari Om Sai in Exhibit BB, but this $4,000.00 was not

included in that list. That expense was the subject of the testimony of both parties, and Patel did confirm that she was seeking judgment for that amount.

**{¶25}** The trial court awarded her the total amount of the expenses on that list, totaling $55,588.64, but did not award the $4,000.00 or make any comment regarding the validity of the claim for that amount. (Decision, Mar. 29, 2022, p. 5, ¶ 21 to p. 6, ¶ 24; p. 11, ¶ 11). While Patel did testify that she was requesting an award of $4,000.00 for that investment, she did not request the opportunity to amend her counterclaim and did not include a reference to this new claim in her closing argument. (Trial Transcript, p. 325, line 20 to p. 326, line 11.) Patel did not have verification of payment, but Jariwala did testify that she made a payment to have the electricity to the hotel restored. (Trial Transcript, p. 91, lines 3-13.).

**{¶26}** While Patel did not include a demand for the $4,000.00 expense in an exhibit or pleading, Civil Rule 54 states in relevant part that: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." Civ.R. 54(C). The Staff Comments relevant to this portion of the Rule state that "the party seeking relief is not necessarily confined to the request for recovery in the prayer, but may seek to amend after seven days before the commencement of trial, subject to Civ. R. 15(A), or in any event recover more at trial than that prayed for, subject to Civ. R. 15(B). Rule 15 seems to have worked well in other contexts and there seems to be no reason why it cannot do the same here."

**{¶27}** Civil Rule 15(B) liberally allows amendments to conform to the evidence presented at trial and notes that "[F]ailure to amend as provided herein does not affect

the result of the trial of these issues." Considering these rules and the testimony at trial, it is evident that the issue of reimbursement for payment of the electric bill was addressed by both parties without objection and the evidence is uncontroverted that Patel made a payment on behalf of Hari Om Sai from her personal funds just as she had for the expenses listed in her Exhibit BB. We have reviewed the record and can only assume that the trial court inadvertently neglected to address the claim for this expense.

**{¶28}** We find Patel's second assignment of error well taken. However, because the trial court did not rule on this issue, we remand this matter to the trial court to consider Patel's demand for reimbursement of the expense of payment of $4,000.00 in March 2017 toward the electric bill for the hotel based upon the record established at trial.

### III.

**{¶29}** In her third assignment of error, Patel claims that the trial court erred by holding that she had forfeited her membership interest in Appellee, Hari Om Sai, LLC. She argues that the trial court incorrectly found that Jariwala complied with the terms of the Operating Agreement and for that reason the termination of her capital account was unwarranted and not supported by the facts. Patel questions many of the transactions involving the funds that Jariwala provided, but she builds her argument upon a contention that Section 4.7 of the Operating Agreement will not be satisfied unless the complaining party's contributions are characterized as capital contributions. She contends that Jariwala made loans to the Company and therefor the forfeiture provisions of the Operating Agreement do not apply.

**{¶30}** Patel requests that we interpret the language of the Operating Agreement, and, because the construction of the written contract is a matter of law, our review is de

novo *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus as quoted in *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952 (1996).

**{¶31}** Our review of the Operating Agreement is guided by the tenet that, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 1997–Ohio–202, quoting *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Foster, supra,* quoting *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. It is a rule of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

**{¶32}** The relevant portion of the Operating Agreement is Section 4.7, captioned "Contributions and Loss of Membership Interest" which states:

> Each Member is required to share and contribute in proportion to their membership interest in the company for any financial need of the company, whether for day-to-day operating expenses or short or long-term capital needs for repairs or renovations. If any Member is unable or unwilling to pay such demand for financial assistance to the company within ten (10) days after receiving written notice (regular mail, overnight courier, email or

fax) of such need for financial assistance from the company, any other Member may pay such on behalf of the non-paying Member and such paying Member will then be entitled to be reimbursed from the personal funds of the non-paying Member along with 5% interest until paid. No Member may receive any distribution, dividend or profit from the company until after any and all loans from other Members have been satisfied. If such loan to the non-paying Member is no(sic) repaid within thirty (30) days of the money having been advanced, then the company will send a written notice of such default to the non-paying Member (regular mail, overnight courier, email or fax) stating that thirty (30) days from the date of such notice, the shares of the non-paying Member will be forfeited back to the company and such non-paying Member will be removed from the company's records as a Member and/or Officer.

**{¶33}** Hari Om Sai, LLC delivered notice to Patel, as a member of the Company, that a meeting would be conducted on September 11, 2017 to consider a call to the members for additional capital in the amount of $205,164.00. Patel did not attend the meeting. Jariwala attended and approved the resolution calling for additional capital in that amount to be contributed to the Company by the members in proportion to the members interest. Patel's share of the contribution would be forty percent or $82,065.60.

**{¶34}** The resolution authorized Jariwala "to take such other and further actions necessary or advisable in the best interests of the company to carry out the intent of these Resolutions as such authorized party (or parties) may deem appropriate." In accordance with this authority, Jariwala delivered a notice to Patel, outlining her obligation to

contribute capital in the amount of $82,065.60 on or before September 21, 2017. Patel did not provide the requested sum, nor did she respond to the notice.

**{¶35}** Jariwala delivered a second notice dated September 25, 2017, notifying Patel that because she had failed to contribute the requested amount to the capital account, he "advanced the amount of $82,065.60 to the Company" on her behalf and that:

> * * [p]ursuant to Section 4.7 of the Operating Agreement of the Company, [she was] required to reimburse Yogesh Jariwala the full amount of this advance, plus 5% interest, on or before October 25, 2017.
>
> * * *
>
> Pursuant to Section 4.7 of the Operating Agreement of the Company, your continued failure to make this payment will result in forfeiture of your membership interest in the Company.

**{¶36}** Patel claims that her attorney responded to this notice in a letter dated October 20, 2017 objecting to the "method used to obtain a cash call." Defendant's Trial Exhibit L. The record contains no further testimony or evidence that the attorneys for the parties discussed the matter prior to the filing of the complaint in this case, but it is clear that Patel did not reimburse Jariwala for the funds that he forwarded on her behalf.

**{¶37}** Jariwala delivered a final notice to Patel, on July 12, 2018 referencing her failure to make the requested payment and concluding: "As of the date of this letter, you failed to reimburse Yogesh Jariwala for the advance described above within 30 days of said advance. Pursuant to Section 4.7 of the Operating Agreement of the Company, your failure to make said payment results in forfeiture of your membership interest in the Company." Plaintiff's Trial Exhibit 13.

**{¶38}** The $205,164.00 contributed to Hari Om Sai, LLC was used to make a payment to the owner of the real estate upon which the hotel was located in the amount of $113,620.19. (Plaintiff's Exhibit "9"). Jariwala's daughter had loaned the Company $75,000.00 and she was demanding payment. Jariwala withdrew $70,000.00 from the Company account, deposited it in his own account and subsequently transferred those funds to his daughter. Patel considers the transactions suspect, arguing that the funds were paid out to Jariwala, but took no action to invalidate them or have the funds returned to the Company. Instead she relies upon her argument that the funds contributed by Jariwala were reported to the IRS as loans rather than capital contributions and that characterization is fatal to his claim that Patel's interest was forfeit.

**{¶39}** Jariwala does not dispute that funds were moved to his personal account, but he explained that they were subsequently used to pay a loan from his daughter or to forestall a foreclosure of the property. He provided documentation to support the existence and the amount of the loan as well as the threatened foreclosure. Jariwala also described several loans he made to the Company after the capital call, refuting Patel's implication that Jariwala's call for additional contribution was unwarranted and was done only to force the forfeiture of Patel's interest. The only remaining issue is Patel's argument that the characterization of the contributions in the Company tax return as loans rather than capital contributions invalidates the forfeiture.

**{¶40}** Patel implies that the forfeiture described in Section 4.7 of the Operating Agreement becomes effective only if Jariwala can demonstrate that the funds he allegedly contributed on behalf of Patel were characterized as a capital contribution. She does not dispute that Jariwala supplied Hari Om Sai the requested amount of $205,164.00, but

contends that because it was a loan and not a capital contribution, the requirements of Section 4.7 were not satisfied. Patel does not provide an explanation of how she has reached the conclusion that the characterization of the funds is a critical factor, but concludes that it is a vital part of the analysis. She further asserts that Jariwala's delay in notifying Patel that her interest was forfeit is grounds for invalidating the forfeiture.

**{¶41}** Section 4.7 of the Operating Agreement references Contributions and Membership Interests, but does not provide a definition of those terms in that Section or any other portion of the agreement. Chapter 1705, Ohio Revised Limited Liability Act[1], defines a contribution as "any cash, property, services rendered, promissory note, or other binding obligation to contribute cash or property or to perform services that a member contributes to a limited liability company in the capacity as a member." R.C. 1705.01(B). Membership Interest is "a member's share of the profits and losses of a limited liability company and the right to receive distributions from that company." R.C. 1705.01(H). The funds supplied by Jariwala were contributions as defined by the Revised Code and satisfied the requirements of the Operating Agreement regardless of their subsequent description within the companies tax return.

**{¶42}** Patel refers to the Operating Agreement and the notices sent by the Company regarding the request for funds to support her contention that Jariwala was obligated to show that his payment to the Company was treated as a capital contribution. She argues that all of the documents refer to a capital contribution, but a close review of those documents serves to undermine her contention.

---

[1] Chapter 1705 was in effect when the Limited Liability Company described in this case was formed and the relevant transactions occurred. Chapter 1706 replaced Chapter 1705 on April 12, 2021.

**{¶43}** Section 4.7 of the Operating Agreement, the critical document in this context, makes no reference to a "capital contribution" contrary to Patel's representation. That Section refers to "financial need of the company," and "financial assistance" but it contains no instruction to designate the contribution as a loan or an increase in the members capital account. The focus is compelling the member to supply funds to the Company "for any financial need of the company, whether for day-to-day operating expenses or short or long-term capital needs for repairs or renovations." The final characterization of the contribution, the impact on the members' capital accounts and the tax consequences are not addressed in this Section.

**{¶44}** The notices issued by the Company regarding the funds make reference to a capital contribution, but only in the sense that the Company was in need of "additional capital in the amount of $205,164.00 in order to fund the ongoing business operations of the Company." Plaintiff's Trial Exhibit 13, p. 2. The notices refer to the need to have the funds deposited in the Company's operating account, but contain no direction regarding whether the contributions should be characterized as loans or increases to the members capital accounts or how the contributions would affect the capital accounts of the members.

**{¶45}** Patel's promise to contribute to the Company when requested is contained within the Operating Agreement and signed by her. R.C. 1750.09(A). Consequently, Patel was obligated to the Company to contribute cash requested and the Company had the right to pursue remedies described in the Operating Agreement or applicable law. R.C. 1705.09(D). Section 4.7 of the Operating Agreement provides a means by which the Company can acquire the necessary funds to continue operation and the remedy when

a member fails to fulfill an obligation The subsequent characterization of the funds as an investment, a loan or other financial obligation falls within the realm of acceptable accounting practices, tax law and the agreement of the members and has no impact on the member's obligation to fulfill their promise to provide the funds.

**{¶46}** We are likewise not persuaded by Patel's objection to the alleged delayed notice of the forfeiture of her interest. She does not describe any prejudice suffered as a result of the delay, but states that the lack of prompt action invalidates the forfeiture. The record does show that the deadline to reimburse Jariwala for the funds he advanced on her behalf passed on October 25, 2017 and that Patel did not receive notice of the forfeiture until July 2018, but we do not find that the gap had an impact on the forfeiture under the terms of Section 4.7.

**{¶47}** The Operating Agreement provides that;

If such loan to the non-paying Member is not repaid within thirty (30) days of the money having been advanced, then the company will send a written notice of such default to the non-paying Member(regular mail, overnight courier, email or fax) stating that thirty (30) days from the date of such notice, the shares of the non-paying Member will be forfeited back to the company and such non-paying Member will be removed from the company's records as a Member and/or Officer.

**{¶48}** The Company delivered a notice to Patel on September 25, 2017 that included this warning:

This letter shall serve as notice of your obligation to make payment to Yogesh Jariwala in the amount of $86,168.88 on or before October 25,

2017. Pursuant to Section 4.7 of the Operating Agreement of the Company, your continued failure to make this payment will result in forfeiture of your membership interest in the Company.

**{¶49}** The terms of Section 4.7 regarding forfeiture of the member's interest as a result of nonpayment are self-executing, so as a result of the delivery of the September 25, 2017 notice, Patel's membership interest was forfeit on October 25, 2017. Whether she received any benefit from the Company or was permitted to participate in the operation of the Company after that date was purely within the discretion of the remaining member.

**{¶50}** Patel's third assignment of error is overruled.

**{¶51}** The decision of the Guernsey County Court of Common Pleas is affirmed in part and reversed in part and the matter is remanded to the trial court for further consideration consistent with this opinion.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.